[No. 1465, November 7, 1912.]

## THE WATER SUPPLY COMPANY OF ALBUQUER-QUE, Appellant, v. CITY OF ALBUQUERQUE, Appellee.

### SYLLABUS (BY THE COURT).

1. The establishment and maintenance of a fountain, at the intersection of two principal and much traveled streets, for quenching the thirst of animals, using the streets, is a "city purpose," and a water company, under a contract with the city which requires it to furnish water, to the extent of 12,000,000 gallons every six months free of charge, for city purposes, cannot collect from said city for water supplied to such fountain.

2. Under the statutes of New Mexico the city council has the power to lay out, establish, grade, pave or otherwise improve the streets within its limits.

3. It is but a humane provision for the city to provide a suitable public place at which the thirst of horses and animals, drawing heavy loads upon the streets may be quenched. Such provisions render the streets more desirable for use and facilitates travel thereon.

4. Where an enterprise is of such a character, that it breeds in an impartial mind a conviction, that the use and benefit of the city is but a pretext, disguising some foreign and ulterior end, we may easily deny to it the attributes of a city purpose.

5. "Domestic use," as the term is used in the ordinance, means the use to which water is applied by the family, for family use, and includes the watering of animals, but it does not include the use of water in public parks or public pleasure resorts, maintained by the city, or the temporary quenching of the thirst of animals while engaged in labor upon the streets.

Appeal from Bernalillo County.

ALONZO B. McMILLEN, for Appellant.

Where a water company was required by statute to furnish water at reasonable rates to the inhabitants for family use and to the municipality for fires and other great necessities free, the court held that the words "family use" applied to the schools, infirmaries and penal institutions, and that the municipality was liable for such water to the same extent as individuals.   Spring Valley Water Works v. San Francisco, 52 Cal. 111; Cromwell v. County of Sac, 94 U. S. 351; So. Pac. Ry. Co. v. U. S., 168 U. S. 1.

FELIX H. LESTER, for Appellee.

Water supplied for the fountain was for "City Purposes."   In re Mayor, 2 S. E. 651; Sun Printing & Pub. Assn. v. New York, 37 L. R. A. 791; Le Couteulx v. City of Buffalo, 33 N. Y. 342; Crosby v. City Council, 18 So. 723; City of Lexington v. Kentucky Chautauqua Assembly, 71 S. W. 944; sec. 2402, sub-sec. 2, C. L. 1897; Water Supply Co. v. City of Albuquerque, 9 N. M. 441; People v. Kelly, 76 N. Y. 487; 7 Cyc. 150.

While it is not necessary that the contract should be extended beyond its terms to justify appellee's position, it is a well established rule of construction that public contracts should be construed liberally in favor of the public.

"If there be any question concerning the correctness of this construction, the doubt must be solved in favor of

the city, because public contracts should be construed, not *contra proferentem*, but liberally in favor of the public.. Indianapolis Cable Street R. Co. v. Citizens' Street R. Co. 127 Ind. 369, 8 L. R. A. 539, 24 N. E. 1054, 26 N. E.. 893; Western Paving & Supply Co. v. Citizens Street R. Co., 128 Ind. 525, 10 L. R. A. 770, 26 N. E. 188, 28 N. E. 88; Cambria Iron Co. v. Union Trust Co., 154 Ind.. 291, sub nom; Union Trust Co. v. Richmond City R. Co., 48 L. R. A. 41, 55 N. E. 745, 56 N. E. 665; Slidell v.. Grandjean, 111 U. S. 412, 28 L. ed. 321, 4 Sup. Ct. Rep.. 475; Joy v. St. Louis, 138 U. S. 1, 34 L. ed. 843, 11 Sup. Ct. rep. 243; Coosaw Min. Co. v. South Carolina, 144 U. S. 552, 36 L. ed. 537, 12 Sup. Ct. Rep. 689; Beach Modern Law of Contracts, sec. 726. This principle of con-- struction, it was said, as applied to public grants, in the Slidell Case, and also in the Coosaw Mining Co. case, is a wise one; it serves to defeat any purpose, concealed by the skillful use of terms, to accomplish something not ap- parent on the face of the act, and thus sanctions only open dealing with legislative bodies." Muncie Natural Gas Co. v. Muncie, 60 L. R. A. p. 830.

"The rule in construing statutes granting franchises to private corporations, is, that all doubts are to be resolved in favor of the public." The Spring Valley Water Works v. The City and County of San Francisco, 52 Cal. p. 125."

The construction which the parties themselves place upon a contract will be adopted by the court, when its terms are uncertain. Ency. U. S. Court Rep. vol. 4, p.. 570; Union Trust Co. v. Richmond City Ry. Co., 48 L. R. A. 41.

If the water furnished for fountain in question was not for "City Purposes," the city cannot be held liable on an implied contract because it was *ultra vires*. McCoy v. Bryant, 53 Cal. 247; Parr v. Greenbush, 72 N. Y. 463; Snyder v. Board of Education, etc., 10 N. M. 446; Smith on Municipal Corporations, sec. 664; Dillon on Municipal Corporations, (5th ed.) vol. 11, sec. 791; id. sec. 1338, p.. 2293, vol. 3; Ency. U. S. Rep. vol. 8, p. 577; Muncie Natl. Gas Co. v. Muncie, 60 L. R. A. 822.

## STATEMENT OF FACTS.

In 1894, a franchise was granted by the city of Albuquerque, the appellee, to the appellant, a corporation, giving to the appellant the right, for the period of twenty-five years to supply to the inhabitants of said city, water, for domestic and other purposes, and a contract was entered into between the city and the company. The franchise provided for meter and schedule rates, for water supplied for domestic use and fixed the charge to be made for water supplied for horses and cattle at a stated price per month. The franchise and contract contained the following provision, viz: "The said company or its assigns shall furnish to the city of Albuquerque, in consideration of the granting of this franchise, all water necessary for the extinguishment of fires and for fire purposes, free of charge; and in addition thereto shall furnish free of charge 12,000,000 gallons of water every six months during the continuance of this franchise *for city purposes,* to be used as the city council shall direct."

At the time of granting the franchise and entering into the contract between the city and the company, the city maintained no place for watering horses, cattle and other animals. In April, 1908, the city caused to be erected at the intersection of Broadway and Central Avenue a watering place for animals known as the Herman Lee Ensign fountain, and on April 18 of that year the city notified the water company to furnish water to said fountain. The water was turned on by the water company and was supplied for about eighteen months, without any charge being made against the city for the water. At the expiration of that time the company installed a meter, and thereafter rendered quarterly bills to the city for the water used, at the meter rate established by the ordinance. The city refused payment and this action was instituted by the company to recover from the city for the water so furnished and supplied to the fountain. From the judgment of the lower court, in favor of the city, this appeal is prosecuted.

## OPINION OF THE COURT.

ROBERTS, C. J.—The only point involved in this

appeal is the construction of the words "for city purposes" as used in the franchise and contract under consideration. Does the establishment and maintenance of a fountain for the watering of animals, at the intersection of two principal and much traveled streets, come within the meaning and purview of the words used in the contract and ordinance? If so, then the judgment of the lower court was proper, otherwise, erroneous.

An examination of the cases where the words have been before the courts for construction, does not afford much assistance, as the courts have refused to attempt to give any complete definition of the words "city purposes." They have, however, stated certain characteristics which every "city purpose" must possess. In the case, in re Mayor, 99 N. Y. 569, the Supreme Court of New York said: "While, as was said, in one of the cases cited, it is impossible to formulate a perfect definition of what is meant by a city purpose, yet two characteristics it must have. The purpose must be primarily the benefit, use or convenience of the city as distinguished from that of the public outside of it, although they may be incidentally benefited, and the work be of such a character as to show plainly the predominance of that purpose. And then the thing to be done must be within the ordinary range of municipal action."

And in the case of Sun Publishing Association v. The Mayor, 152 N. Y. 257, the court said: "We shall not now attempt a definition, except in general terms, further than is necessary to determine the meaning of the acts which we have under review. Genrally we think, the purpose must be necessary for the common good and general welfare of the people of the municipality, sanctioned by its citizens, public in character, and authorized by the legislature."

Under the statutes of New Mexico the city council has the power to lay out, establish, grade, pave or otherwise improve the streets within its limits. In fact, it is the duty of every city, in all the states, to provide suitable streets, for accommodation of the public, and they usually are given the power to improve them

in various ways. They may plant shade trees in order to beautify them and to make them more pleasant and enjoyable thoroughfares; they may be sprinkled to lay the dust, thereby rendering them more comfortable for travel and to prevent the spread of disease breeding germs. The erection of a drinking fountain for animals, which persons using the streets with animals, for the transaction of the traffic of the city, can use, for the watering of the animals employed, certainly is a great convenience and increases the comfort and convenience of the people using the street. Water, to quench the thirst of animals, is a necessity, and is required very frequently during the heated seasons of the year. It is but a humane provision for the city to provide a suitable public place at which the thirst of horses drawing heavy loads upon the street, can be quenched. We do not think there is any doubt but that the city had the power to provide the fountain in question. It renders the street more desirable for use, and greatly facilitates travel thereon. It is clearly a city purpose to provide for the comfort and convenience of the people using a street. Large and compact aggregations of people necessarily give rise to peculiar conditions and create peculiar wants, which are not common to rural communities. As civilization advances, new conditions arise and the needs and requirements of the people increase. Humane provisions, for the care and proper treatment of animals, have been enacted in a great many states and it is, we think, clearly within the power of a city to provide means and methods to alleviate the suffering of animals, using the streets, by erecting and establishing suitable drinking fountains.

Appellant contends, however, that under the terms of its franchise it is given the right to furnish water for domestic purposes, and that the rates for watering animals are fixed by the schedule established; that to hold that the city can erect a drinking fountain for animals and require the water company to supply water therefor free. under the terms of the contract, would enable the city to erect fountains or watering troughs in front of each residence, thereby permitting the owner of animals to

lead his horses and cattle to the fountain for water and avoid payment of the schedule charge for watering animals. In the case of in re Mayor, supra, the Court of Appeals, in discussing the contention raised that if the city had the right to establish a city park, outside the city limits, it would have the right to establish it in the Adirondack Mountains or at Niagara and it would still be a "city purpose," the court says: "Where the enterprise is of such a character that it may be justly so described, and breeds in the impartial mind a conviction that the use and benefit of the city is but a pretext disguising some foreign and ulterior end, we may easily deny to it the attributes of a city purpose." If the city should establish watering places, as indicated by the appellant, it would then clearly appear that the use intended was not a public use, but for purely domestic purposes, and it would be denied the attributes of a city purpose. And there is nothing in the record in this case which discloses that the watering place in question is used for domestic purposes. For all that appears, there may be a city ordinance in force, prohibiting the use of water from this fountain for domestic purposes. It is not shown by the record, that any person or persons used the fountain, except as its use was incident to the use of the street as a public thoroughfare. No evidence was offered showing that the city permitted persons to lead animals from their stables or corrals to this fountain.

Appellant also contends that as there were no drinking fountains for animals in existence, at the time the contract was entered into, that such fountains were not within the contemplation of the parties. It does appear, however, that the city contracted for many times the quantity of water which it was using at the time the contract was made and it would be absurd to hold that the city was limited to the then uses of water, in view of the large amount contracted for. The company agreed to furnish a certain quantity of water for "city purposes," and the parties certainly had in view the supplying of water for all legitimate purposes of the city, present and prospective. The only limitation in the minds of

the parties was that the water should be for a city purpose.

Appellant further contends that this contract was construed by the territorial supreme court in the case of Water Supply Company v. Albuquerque, 9 N. M. 441, and that we are bound by the construction there placed upon it. Reliance is placed upon the following question asked and answered by the court in that case: "If the city council are the sole judges as to the purpose for which this water is to be used, could they furnish it to the mills, factories or the railroad at Albuquerque; could they furnish it for watering stock? We think not, so long as the words 'for city purposes' are in the contract." In that case, however, the sole question that was before the court, was as to whether the schools of Albuquerque were entitled to the free use of water, and the court properly held that under our law the school corporation was entirely separate and apart from the city government; was a distinct municipal corporation, hence the furnishing of water to the school buildings was not a city purpose. The question asked and answered was pertinent, and the answer was correct and is in accord with our view. There is no doubt but that the city could not, under its contract, furnish water for domestic use, or the watering of animals, except to temporarily supply such animals as were using the streets. It would have no right to permit people to habitually lead or drive their animals to such drinking fountain and make the use of such water domestic, thereby depriving the water company of revenue to which it was entitled, and there is nothing in the record showing that this was done. The ordinary requirements of animals, the owner must make provision to supply, but to hold that the city cannot supply a suitable place, on a busy street, for quenching the thirst of animals using the streets in legitimate traffic, would require the driver often to drive a long distance to secure water for the temporary needs of his animals, and the convenient use of the streets and the accommodation of the traveling public is subserved by such a fountain. It might as well be contended that the city would not have the power to erect a drinking fountain, in a public park, for the accommodation of the

people who visit the resort. The use of water there by the people would be as much a domestic use, as would the use of water by animals on a street. Counsel for appellant admits that the use of water, for supplying a fountain in a public park, is a city purpose, for which the company is bound to furnish water. Domestic use, as the term is used in the ordinance fixing the schedule of rates to be charged, means the use to which water is applied by the family, or for family use, and includes all uses to which water is applied around the home, and includes the watering of animals, but it does not include the use of water in public parks or public pleasure resorts maintained by the city, or the temporary quenching of the thirst of animals while engaged in labor upon the streets.

It follows that the judgment of the lower court is correct and must be affirmed, and it is so ordered.

SYLLABUS (BY THE COURT).

