# Travis *v.* L. & N. R. R. Co.

### *Damages for Serving Unwholesome Food.*

(Decided June 19, 1913.   62 South. 851.)

1. *Food; Sale of Spoiled Food; Negligence.*—A railroad company would not be liable under section 7074, Code 1907, to one made sick by serving spoiled oysters in a dining car, if neither it nor its servants were negligent with respect to serving the oysters.

2. *Same; Care Required.*—A keeper of a restaurant or hotel serving customers meals, must exercise the same degree of care in selecting and preparing food which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in preparing food for his own private table, and is liable for injury to customers in failing to do so.

3. *Same; Burden of Proof.*—One suing a railroad for damages suffered from sickness caused from eating oysters in one of its dining cars, has the burden of showing to the reasonable satisfaction of the jury that he was served with spoiled food through defendant's negligence.

[Travis v. L. & N. R. R. Co.]

4. *Same; Instructions.*—Where the evidence showed that the oysters were purchased about twelve hours before they were served, and there was also evidence that a reasonably prudent person engaged in that business would have examined the oysters before serving them to ascertain if they were apparently fresh and wholesome when cooked, a charge that if defendant and its agents exercised ordinary care in selecting, purchasing and keeping the oysters which were served to plaintiff, they should find for defendant, ignored the duty of defendant to inspect the oysters before serving and was consequently erroneous.

5. *Same.*—A charge asserting that if defendant exercised ordinary care in selecting and keeping the oysters, plaintiff could not recover, though he was served with a spoiled oyster, was calculated to mislead because neglecting to define the character of the ordinary care required of a restaurant keeper.

6. *Same.*—Where the court instructed that defendant was not a guarantor of the soundness of every oyster furnished, and if it exercised ordinary care in selecting, keeping and preserving its oysters, including those furnished plaintiff, and did not knowingly furnish plaintiff with unwholesome oysters, the jury should find for defendant; also that the burden was on plaintiff to show negligence on the part of defendant or its employees in selecting the oysters, and that if the oysters served plaintiff were from a reputable dealer in bulk, in the usual course of such dealings, and were in an apparent fresh, safe and sound condition, so far as defendant could discover by inspection, defendant was not guilty of negligence in serving the oysters cooked as ordered by plaintiff, and taken from the bulk, such instructions were calculated to mislead, and should not have been given.

7. *Same.*—A charge asserting that if defendant inspected the oysters through its chief cook or chef before they were fried and served to plaintiff, and that if they were then wholesome and fresh, defendant discharged its duty to plaintiff, was misleading in the use of the word "before" where the word "when" should have been used.

8. *Same; Evidence.*—The fact that the sight of an oyster causes plaintiff unpleasantness is not evidence tending to show that the oysters he ate, the basis of the action for damages for serving unwholesome oysters, were the cause of his sickness.

9. *Damages; Items; Wages.*—Where the employer of plaintiff during his sickness and convalescence, continued to pay him his usual wages, he could not recover, in an action for damages for negligently causing said sickness, from defendant for loss of time from his work during such sickness.

10. *Charge of Court; Reasonable Doubt.*—A charge that if anyone of the jurors is not reasonably satisfied from the evidence that plaintiff is entitled to recover, the jury cannot find for plaintiff, is proper.

11. *Negligence; Ordinary Care.*—Ordinary care is that care which ordinarily prudent persons exercise under the same or similar circumstances, and a want of that care is negligence.

12. *Evidence; Opinion Evidence.*—While one made sick by eating spoiled oysters may testify as to his symptoms after eating them, he cannot properly testify as to the cause of such symptoms, that being a question for the jury to determine.

[Travis v. L. & N. R. R. Co.]

13. *Same; Opinion.*—While a medical witness testified that spoiled oysters being· eaten might have or could have produced plaintiff's sickness, it was not proper for him to testify that the sickness was caused from eating spoiled oysters, as that was for the jury to determine.

14. *Same; Expert; Common Knowledge.*—Where a witness had testified that spoiled oysters could be detected by casual examination, further evidence by him that the proper thing to do when taking oysters to prepare them for food, is to examine them one by one before serving, was a matter of common knowledge, and not the subject of opinion evidence.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by M. B. Travis against the Louisville & Nashville Railroad Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The substance of count 1 sufficiently appears. Count 3 alleges the operation by defendant of a dining car where it sold articles of food to passengers for immediate consumption, guaranteeing the same to be pure and wholesome, and on a certain day, through its agents or servants, sold and served to plaintiff in said dining car for immediate consumption, which plaintiff then and there immediately consumed as food, tainted, deleterious, or unwholesome oysters, as proximate consequence of which plaintiff was made sick and sore, etc.

The following charges were given to the jury at the instance of the defendant:

"(1) Plaintiff is not suing in this action for any violation of defendant's duty to him as a passenger on its train.

"(2) It matters not whose duty it was to inspect the oysters before service; if you believe from the evidence that they were fresh, wholesome, and sound, defendant is not liable to plaintiff in this action."

"(4) The mere eating of the oysters by plaintiff and the fact that he was sick afterwards does not by itself show any negligence on the part of defendant.

"(5) If you believe from the evidence that the oysters served and furnished plaintiff on the occasion mentioned were purchased by defendant in bulk in due course of trade from a reputable dealer in a market house in New Orleans on the morning of the day the same was served, and that they were fresh so far as defendant could know or ascertain by inspection, and were in such condition at the time the same was served to plaintiff, then your verdict must be for defendant."

"(3) In no event can the plaintiff recover for loss of time if you believe from the evidence that he received his wages for the time he was sick."

"(6) The gravamen of this action is the negligence of defendant in serving oysters to plaintiff. The plaintiff has alleged such negligence on the part of defendant, and I charge you, as a matter of law, that he cannot recover without proof of such negligence, and, if from all the evidence such negligence has not been proven to your reasonable satisfaction, your verdict should be for the defendant.

"(7) You cannot find for the plaintiff unless the evidence reasonably satisfies you that the injuries complained of were the result of eating tainted, deleterious, or unwholesome oysters, negligently furnished by defendant; and, if you believe from the evidence that said injuries were produced by any other cause, your verdict must be for the defendant."

(10) Affirmative charge as to third count.

"(11) Plaintiff has alleged, in the only count now before you for consideration, that defendant furnished plaintiff unwholesome, deleterious, or tainted oysters, and if the evidence fails to establish to your reasonable satisfaction the negligence of defendant in this respect, or if said evidence fails to establish to your reasonable satisfaction that the oysters furnished were tainted, de-

[Travis v. L. & N. R. R. Co.]

leterious, or unwholesome, and that the injuries com-plained of were caused by reason thereof, your verdict should be for the defendant.

"(12) If you believe from the evidence in this case that any oyster served to plaintiff on the occasion men-tioned in the complaint was unsound or unwholesome, putrid, or spoiled, and this fact was unknown to defend-ant, and could not have been discovered by defendant in the exercise of reasonable care, and was not in such condition knowingly served by the defendant to plain-tiff, your verdict must be for defendant.

"(13) Before you can find a verdict for plaintiff in this case, you must be reasonably satisfied by the evi-dence that the oysters in this case consumed by plain-tiff were tainted, deleterious, or unwholesome, and that they caused the sickness of plaintiff, and that such con-dition of the oysters was on account of the negligence of defendant, its servants or agents."

"(16) In the absence of negligence on the part of de-fendant, its servants or agents, you cannot find for the plaintiff."

"(14) If any one of your number is not reasonably satisfied from the evidence that the plaintiff is entitled to recover, you cannot find a verdict for plaintiff."

"(18) The defendant is not liable as an insurer of the oysters served to plaintiff, and therefore is not lia-ble if he was made sick by eating them, unless the jury believe from the evidence that defendant was guilty of negligence.

"(19) The court charges the jury that plaintiff can-not recovered under the second count of the complaint without the evidence showing to your reasonable satis-faction that the oysters consumed by plaintiff were tainted, putrid, deleterious, or unwholesome.

"(20) If you believe from the evidence that defendant inspected said oysters through its chief cook or chef before they were fried and served to plaintiff, and that they were wholesome, sound, and fresh at that time, then defendant dicharged the duty that it owed to plaintiff and will not be liable in this action."

"(8) The defendant is not a guarantor under the law of the soundness of each and every oyster furnished to fill the orders of plaintiff, and if you believe from the evidence that defendant exercised ordinary care in the selection, keeping, and preserving of the oysters to be furnished to its customers, including the plaintiff, on the occasions mentioned, and that it did not knowingly furnish in filling plaintiff's order, an oyster or oysters that were tainted, putrid, deleterious, or unwholesome your verdict should be for defendant.

"(9) If you believe from the evidence in this case that the defendant and its servants and agents exercised ordinary care in the selection, purchase, and keeping of said oysters, then even if there was a spoiled oyster among same, and that same was served to plaintiff, your verdict must be for the defendant."

"(15) The burden is upon the plaintiff to show some negligence on the part of defendant, its servants or employees, as to the selection of said oysters."

"(17) If you believe that the oysters served to plaintiff were purchased from a reputable dealer on April 7, 1910, in bulk and in a bucket in the usual course of such dealings in such articles as food stuffs, and were in an apparent fresh, safe, and sound condition so far as defendant knew or could discover by such inspection, then it is not guilty of any negligence in serving said oysters cooked as ordered by plaintiff and taken from said bulk."

[Travis v. L. & N. R. R. Co.]

J. B. Brown, A. A. Griffith, and F. E. St. John, for appellant. Under section 7074, Code 1907, defendant was the insurer of wholesomeness of the food served to plaintiff and specific averments and proof of negligence are not essential.—*State, ex rel. Robinson v. McGough*, 118 Ala. 166; *Kelly v. Burke*, 132 Ala. 243; *K. C. M. & B. v. Flippo*, 138 Ala. 488; *Sloss-S. S. & I. Co. v. Sharpe*, 161 Ala. 435. The offer of articles of food for consumption immediately implies that the food is wholesome and fit for consumption, and raises the legal implication of a guarantee of its soundness.—*Pantaze v. West*, 61 South. 42; 56 South. 906; 18 Pick. 62; 7 Am. Dec. 339; 73 Am. Dec. 174; 139 Mass. 411; 12 Johnson 468; 85 Atl. 396; Addison on Contracts, sec 621. It is a matter of judicial knowledge that an oyster is an annual.—22 Enc. Brit. p. 424. The purpose of the statute is to protect the public from deleterious and unwholesome food regardless of the intent of the seller, and therefore it is immaterial whether it be fish or flesh.— 48 Am. Rep. 638. It is competent for plaintiff to state what caused his sickness.—*Brantley v. State*, 91 Ala. 49. The physician's evidence is also competent.—*So. Ry. v. Hobbs*, 151 Ala. 335; *Lovelady v. B. R. L. & P.*, 161 Ala. 494; *Dixon v. State*, 139 Ala. 104. The oral charge of the court was error.—*Sloss-S. S. & I. Co. v. Inman*, 129 Ala. 429. Under the following authorities, the court erred in the charges given for defendant.— 21 L. R. A. 139; 40 L. R. A. (N. S.) 48, and authorities cited supra. Charge 1 was certainly erroneous.— *L. & N. v. Weathers*, 163 Ala. 52; *L. & N. v. Harrington*, 52 South. 57. Charge 4 was erroneous.—*Pantaze v. West, supra.*

George H. Parker, and Eyster & Eyster, for appellee. Count 1 was subject to demurrer interposed,

and count 3 was not proven, and hence, the verdict was correct.—*Sheffer v. Willoughby,* 54 Am. St. Rep. 483; 33 South. 190.

DE GRAFFENRIED, J.—The Louisville & Nashville Railroad Company maintains, for the convenience and comfort of its passengers, dining cars on some of its passenger trains. The plaintiff, B. M. Travis, was on April 7, 1910, a passenger of the defendant railroad company and some time that evening (probably about 7 p. m.) went into the dining car attached to his train and ate some fried oysters and some scrambled eggs. Shortly thereafter (perhaps 15 or 20 minutes) he was taken sick and his symptoms all indicated that his sickness was probably due to the food which he ate while in the dining car. This sickness of the plaintiff the plaintiff claims was a serious matter. He claims that he was confined to his bed for a long time; that his life was in serious danger; that he incurred much expense in apothecary and doctors' bills; and that he endured much physical pain and mental distress. The plaintiff is of the opinion that the oysters which were served to him in the dining car were spoiled and that they were the cause of all his distress. He is of the further opinion that the defendant's servants or agents were guilty of negligence in serving him the oysters in their alleged spoiled condition, and this suit was brought by the plaintiff against the defendant for the recovery of the damages which he alleges he suffered by reason of said alleged act of negligence on the part of the servants or agents of the defendant.

1. Section 7074 of the Code of 1907 provides as follows: "Any butcher or other person who sells, or offers or exposes for sale, or suffers his apprentice, servant, agent, or other person for him, to sell, offer, or ex-

pose for sale, any tainted, putrid, or unwholesome fish or flesh, or the flesh of any animal dying otherwise than by slaughter, or slaughtered when diseased, for the purpose of being sold or offered for sale, must, on conviction, be fined not less than twenty nor more than two hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county for not more than six months."

The above statute is not *aimed at* but was passed for *the benefit of* hotels, restaurants, and public eating houses, as well as for the benefit of those who prepare and eat their food at their own homes.

A butcher, market man, or other person who sells fish, flesh, etc., to hotel keepers, restaurant keepers, public entertainers, or to private individuals should know something about when the fish or the animal whose flesh he sells was killed, and how it has been kept since it was killed, and, as his customers must rely in large measure upon his diligence, good faith, and intelligence, the above statute was passed for the purpose of enforcing the performance of a duty which the nature of such occupations creates in favor of the public. Common experience teaches that public entertainers as well as private individuals must, in a great measure, rely upon the honesty and good sense of the man from whom they purchase the supplies which find their way through the kitchen into the dining room.

The first count of the complaint was drawn upon the theory that, under the terms of the above-quoted statute, the defendant was liable to the plaintiff *if* the oysters were in fact *spoiled* and his sickness was created by reason thereof, *although* neither the defendant nor any of its servants or agents were guilty of *any* act of negligence in or about said oysters or in or about serving them to the plaintiff.

The above statute has no application to the facts of this case, and the trial court was free from error in sustaining the defendant's demurrer to said count.

2. A restaurant keeper warrants that the food which he serves in his restaurant belongs to that *class* of food which is generally accepted to be fit for ordinary human consumption, and that he has used, in the selection and preparation of his food, that degree of care which the law exacts of those who follow his occupation for a livelihood. The law requires that, in the selection of the food for his restaurant and in cooking it for his customers, he shall exercise that same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table. If, in the selection of such food or in preparing it for his customer, the keeper of a restaurant does not exercise *that* care, and through such *want* of care his customer who eats the food so selected and prepared is thereby made sick, *then* he is liable to such customer for the damages so suffered by him.—*Sheffer v. Willoughby,* 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483; *Bishop v. Weber,* 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715.

The trial court committed no error in giving affirmative instructions to the jury on behalf of the defendant, at the written request of the defendant, as to count 3 of the complaint.

3. The only question, under the evidence in this case, for the jury was whether the dining car servants of the defendant served the plaintiff with tainted or spoiled oysters, and if so, whether *this* was due to negligence of the servants or agents of the defendant. There was no

evidence and no claim that the oysters served the plaintiff were improperly cooked or prepared.

As, therefore, the burden was upon the plaintiff to show to the reasonable satisfaction of the jury that, through the negligence of the defendant or its agents or servants, he was served with tainted or spoiled oysters, the court, under the evidence in this case, committed no error in giving to the jury written charges 1, 2, 4, 5, 6, 7, 10. 11, 12, 13, 16, 18, and 19.

4. The evidence discloses that during the period of the plaintiff's sickness and convalescence his employer continued to pay him his customary wages. Written charge 3 was therefore properly given to the jury.

5. Written charge 14 has been repeatedly upheld by this court.

6. We are, however, upon reconsideration of this case, of the opinion that the trial court committed reversible error in giving written charge 9 to the jury at the written request of the defendant. The charge is somewhat involved, but its plain meaning is that, if the servants of the defendant used ordinary care in the selection and purchase of the oysters and in keeping them until they were served to the plaintiff, then the defendant was not liable.

The oysters, according to the evidence, were purchased about 12 hours before they were served, and while the defendant may have exercised in the selection, purchase, and keeping of the oysters that care which a reasonably prudent man, skilled in the business of selecting and keeping fresh oysters for the table, would have exercised in the selection and keeping of oysters for his own use, nevertheless there was evidence in the case tending to show that such a man, before serving them, would have examined them for the purpose of ascertaining if, when placed on the table or carried to the

kitchen to be cooked, they were apparently in a fresh and wholesome condition. This duty the charge altogether ignores, and for this reason was vicious and should have been refused.

Moreover, the charge was calculated to mislead the jury in that it failed to define the character of the ordinary care which the law exacts of a restaurant keeper.

"Ordinary care is that care which ordinarily prudent persons would exercise under the same, like, or similar circumstances, and the want of that care is negligence."—6 Words and Phrases, p. 5031, and authorities there cited.

The care which the law exacts of a restaurant keeper is, as we have already said, that degree of care which a man of ordinary prudence, skilled in the art of selecting and preparing food for human consumption, would exercise in selecting and preparing food for his own private use, and not the ordinary care of a man of ordinary prudence who possesses no such knowledge. We do not mean to say that we would reverse this case if the failure to define the ordinary care which the law exacts of a restaurant keeper was the only criticism to which charge charge 9 could be subjected. *That* defect only gives to the charge a misleading tendency of which it could have been relieved by a counter charge on the part of the plaintiff defining the "ordinary care" which the law exacts in such cases.

This case is to be again tried, however, and we deem it proper to call attention to misleading tendency of the charge for the reason stated.

7. Charges 8, 15, and 17 were at least calculated to mislead the jury, and upon another trial, if the issues and the evidence are the same as they are shown by this record to have been on the former trial, they should be refused.

8. Charge 20 has a misleading tendency and should have been refused. If the word "before" in said charge is stricken from it and the word "when" is substituted therefor, the defect in the charge will be cured. The word "before," as it appears in the charge, may refer to an inspection of the oysters made several hours be-fore the oysters were prepared for the plaintiff.

9. The trial court refused to permit the plaintiff to testify that in his opinion his sickness was caused by the oysters that were served to him in the defendant's dining car and that after his sickness he could not eat oysters.

We think that it was entirely competent for him to tell his symptoms *after* eating the oysters, but we do not think that the trial court should be put in error for refusing to allow him to give his opinion as to the *cause* of those symptoms. That was a question for the jury.

There is nothing in the case of *Brantley v. State,* 91 Ala. 49, 8 South. 816, *Knowles v. State,* 80 Ala. 9, and *Carl v. State,* 87 Ala. 17, 6 South. 118, 4 L. R. A. 380, in conflict with these views. In these cases witnesses were permitted to testify that certain drinks did or did not have upon them the same effect as *whisky.* Alcohol has a peculiar wellknown effect upon human beings, and in those cases these witnesses were permitted to testify to "a shorthand rendering of the facts." In the instant case the witness was called upon to give his opinion as to the *cause* of his sickness.

We are satisfied that the plaintiff is of the opinion that the dinner which he ate in the dining car was the cause of his sickness, and we feel confident that he *thinks* that the oysters were the sole cause of it. This being true, the sight of an oyster may cause the plain-

tiff unpleasantness, but that fact does not tend to show that the oysters actually made the plaintiff sick.

10. The trial court properly excluded the evidence made the basis of the eighth assignment of error. It was for the jury, and not the witness, to say whether spoiled oysters caused the sickness. Dr. Burnham might well have testified that spoiled oysters could have produced the plaintiff's sickness, but it was *not* for him to say that the sickness was caused by spoiled oysters. The question as to whether the oysters were spoiled was a disputed issue of fact.

11. One Whittaker, who testified as a witness for the plaintiff qualified as an expert in the matter of handling, cooking and serving oysters. He testified, among other things, that by the casual examination of an oyster "you can tell whether it is spoiled or not; a perfect oyster is plump and of a bluish cast; a spoiled oyster is very black and the hard substance of a spoiled oyster is very hard and turns a yellow cast.   *   *   *   A man drawing oysters from a receptacle with a ladle could tell whether an oyster was in good condition or not if he was accustomed to handling oysters."

The above being the condition of the witness' evidence on the subject under discussion, the court committed no error in excluding from the jury the statement of this witness that the "proper thing to do when taking oysters out of a receptacle to prepare them for food is to take the oysters from the vessel, with a ladle, one by one and examine each before serving." It was not shown that *this* was the custom among well-regulated hotels and restaurants, and the evidence was not given upon a subject peculiarly within the knowledge of an expert. A person who never kept a restaurant and who never served an oyster knows, if he knows a spoiled oyster when he sees it, that, if oysters are taken sep-

arately from a receptacle and examined separately, a spoiled oyster can be more readily detected than if they are taken en masse from the receptacle.

For the error pointed out the judgment of the court below is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.