FLORENCE S. FRIEND *vs.* CHILDS DINING HALL COMPANY.

Suffolk.    November 15, 1917. — September 11, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Innkeeper. Restaurant Keeper. Food. Contract,* Implied, Negligence of plaintiff. *Words,* "Victualler."

Where a restaurant keeper in response to the order of a guest furnishes food to be eaten on the premises, whether or not the transaction constitutes a sale, there is an implied contract on the part of the restaurant keeper that the article furnished as food is fit to eat. CROSBY, J., dissenting.

In an action of contract against a restaurant keeper for furnishing food to the plaintiff to be eaten on the premises which was not fit to eat, it was *said* that, assuming that the provision of the sales act contained in St. 1908, c. 237, § 15 (3), that, "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed," applied to such an action, and assuming, contrary to the circumstances of the case, that it was the plaintiff's duty to examine the food before eating it, it would be a question of fact whether rational investigation was made by the plain-

tiff respecting the character of the food set before her and whether the noxious nature of the thing which caused the harm reasonably ought to have been discovered.

TORT OR CONTRACT for injuries sustained by the plaintiff in attempting to eat foreign matter furnished to her as food at the defendant's restaurant in Boston on July 12, 1915, the declaration containing a count in tort for personal injuries and a count in contract, which is quoted below. Writ dated December 4, 1915, and amended on January 2, 1917, by adding the words "or contract."

The second count, on which the plaintiff elected to rely, waiving her first count, was as follows: "Count 2. Now comes the plaintiff in the above entitled action and says that the defendant corporation owned, conducted and managed a dining hall or lunch room in Boston, County of Suffolk; and was there doing business with and for the accommodation of the public; that on or about July 12, 1915, on the request and invitation of the defendant in its said lunch room the plaintiff ordered and bought of said defendant and said defendant sold and delivered to the plaintiff certain food for the purpose and with the express understanding that said food was to be then and there eaten by the plaintiff; that in consideration of the price agreed to be paid and actually paid by said plaintiff for said food, the defendant promised and under implied warranty represented that said food furnished was and would prove to be in a good and wholesome condition and fit to eat; that the plaintiff relied on the defendant's skill and judgment in the selection and preparation of said food then and there paid for and ate said food that said food so selected, delivered and furnished by said defendant for the purpose of being eaten by said plaintiff, was not in a wholesome condition and fit to eat but was unwholesome, contained foreign matter and was otherwise unfit to be eaten whereby the plaintiff in the exercise of due care while eating said food was injured, was made sick, suffered pain of body and anguish of mind, was put to expense for medicines, dental and medical treatment, was unable to perform her usual labor and was otherwise put to loss and damage."

The answer contained a general denial, and also alleged that the plaintiff at the time of the alleged injury was not in the exercise of due care.

In the Superior Court the case was tried before *Bell, J.* The plaintiff's evidence is described in the opinion. At the close of the plaintiff's evidence, the defendant asked the judge to order a verdict for it. Whereupon the judge with the consent of the parties reported the case for determination by this court and, the parties agreeing upon $150 as the amount of the damages, the judge ordered the jury to return a verdict for the defendant, with leave reserved, with the consent of the jury, to enter a verdict for the plaintiff for $150 if this court should decide that the ordering of the verdict was wrong and that the plaintiff was entitled to recover; otherwise, the verdict for the defendant was to stand.

St. 1908, c. 237, § 15, begins as follows:

"Section 15. Subject to the provisions of this act and of any other statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be of merchantable quality.

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

*J. H. Baldwin & C. H. Donahue,* for the plaintiff, submitted a brief.

*F. H. Smith, Jr.,* for the defendant.

RUGG, C. J. There was evidence tending to show that the defendant kept in Boston a restaurant, in which the plaintiff ordered from one of the waitresses, "New York baked beans and corned beef." This food was served to the plaintiff and she sat at a table to eat it. She testified, "I started to eat the food and there were two or three dark pieces which I thought were hard beans, that is, baked more than the

others, and I put two in my mouth and bit down hard on them, and . . . I was hurt. . . . I took those things out of my mouth and found they were stones." There was no further evidence that the plaintiff had anything to do with the selection of the beans. She gave no instructions respecting the food other than to order it. There was no evidence of express warranty or that the defendant knew of the presence of the stones in the food. There was evidence of injury to the plaintiff. At the close of the evidence the plaintiff elected to rely upon a count for breach of an implied warranty of fitness to eat in a contract for food to be eaten on the premises of the defendant. The defendant introduced no evidence. The question is whether the plaintiff was entitled to go to the jury.

There is strong ground for holding that the contract made between one who keeps a restaurant and one who resorts there for food to be served and eaten on the premises is a sale of food. The evidence in *Commonwealth* v. *Worcester*, 126 Mass. 256, was that on two or three different occasions people resorted to the defendant's dwelling house and there were served with meals; with these and as a part thereof intoxicating liquors were provided. The price paid was single, including both food and drink. The complaint was for keeping a tenement used for the illegal sale and illegal keeping for sale of intoxicating liquors. It was held that "The purchase of a meal includes all the articles that go to make up the meal. It is wholly immaterial that no specific price is attached to those articles separately. If the meal included intoxicating liquors, the purchase of the meal would be a purchase of the liquors. It would be immaterial that other articles were included in the purchase, and all were charged in one collective price." That decision rests entirely upon common law principles as to sales and St. 1875, c. 99, § 17, then in force (now R. L. c. 100, § 64), making delivery of intoxicating liquor under certain circumstances *prima facie* evidence of sale, was not adverted to and very likely was not applicable to the facts there presented. Precisely the same point was held in *State* v. *Lotti*, 72 Vt. 115. The defendant in *Commonwealth* v. *Warren*, 160 Mass. 533, was charged with selling milk not of good standard quality contrary to St. 1886, c. 318, § 2. The evidence was that a guest at the inn of the defendant conducted on the American plan was served

as a part of his breakfast, for which he paid a single price, with a glass of milk not of the quality required by the statute. It was said in the course of the opinion holding that the defendant might be found guilty, "The milk bought by the witness Kelly was purchased by and delivered to him as a part of his breakfast, and was just as much a sale as if a specific price had been put upon it, or it had been bought and paid for by itself." Similar decisions have been made by other courts. In *People* v. *Clair*, 221 N. Y. 108, it was held that the serving of partridges by a hotelkeeper to guests who paid for board and room at the rate of $2 per day, was a sale as matter of law in violation of a statute which provided that such game should "not be sold, offered for sale, or possessed for sale for food purposes." A similar decision was rendered in *Commonwealth* v. *Phoenix Hotel Co.* 157 Ky. 180, with reference to the possession of quail by an innkeeper with intent to serve to his guests in violation of a statute which prohibited the sale of such birds. It there was said at page 185, "The guest at the hotel or restaurant who is served with quail for compensation as certainly purchases it and the proprietor of the hotel or restaurant as certainly exposes it for sale and sells it as if it were purchased for compensation from a dealer who had it for sale and was carried home by the purchaser to be served on his table." It was decided in *Commonwealth* v. *Miller*, 131 Penn. St. 118, that where the keeper of a restaurant served oleomargarine with a meal to a guest who was charged and paid fifty cents for the meal, there was a sale within the terms of a statute which prohibited the sale of oleomargarine.

In view of these decisions it would be difficult for this court to hold that the transaction arising from a contract to serve to a guest food to be eaten by him upon the premises of the keeper of an eating house, is not a sale. If it is a sale, then plainly it is governed by the sales act, St. 1908, c. 237, § 15 (1), which is in these words: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose." It is manifest that at least it might be inferred from the relations of the parties, that the

guest who asks to be served food upon the premises of one who is the keeper of a restaurant makes known as the particular purpose for which the food is required that it is then and there to be eaten, and that he relies upon the latter's skill or judgment in the selection and preparation of the food. Hence there would be an implied warranty that it was reasonably fit for such purpose.

If the transaction is a sale, the rule is the same apart from the sales act. That was settled after great consideration in *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, a case decided before the sales act took effect. It there was held, page 284, that the English rule as to implied condition of soundness in the sale of food by a dealer prevails here. That rule was stated at pages 280, 281, in these words: "The rule now established in England is that, in the sale of an article of food by one not a dealer, there is no implied condition or warranty that it is fit to be eaten. . . . Since the sale of goods act, if the sale is made by one not a dealer, there is no liability, by force of § 14. If the sale is by a dealer and the selection of food is left to him, it is an implied term or condition of the sale that the provisions sold shall be fit for food whether supplied under a pre-existing contract, . . . or in response to an order not given in person, . . . or even when the order is given in person in the dealer's shop, provided, . . . that the selection is left to the dealer."

But there is authority to the effect that, when food is furnished to a guest by the keeper of a restaurant or inn, the transaction does not constitute a sale, that the title to the food does not pass, that the customer may consume so much as he pleases, but that he cannot carry away of the portion ordered that which he does not eat, or give or sell it to another; and that the charge made is not for the food alone, but includes the service rendered and the providing of a place in which to eat. It is stated in Beale on Innkeepers, § 169, "The title to food never passes as a result of an ordinary transaction of supplying food to a guest; or, as it was quaintly put in an old case, 'he does not sell but utters his provision.'" *Parker* v. *Flint*, 12 Mod. 254.

Therefore it seems desirable to consider somewhat the relation of the guest to a keeper of a place where food is served for immediate consumption. It is ancient law that when one resorts to a tavern, inn or eating place, there for a consideration to be served

with food for immediate consumption, and is received as a guest by the keeper, a duty is implied that the food shall be fit to eat. It has been said that "if a man goes into a tavern for refreshment, and corrupt drink or meat is there sold to him, which occasions his sickness, an action clearly lies against the tavern-keeper . . . an action lies against him without express warranty, for it is a warranty in law." Keilwey's Rep. 91. *Burnby* v. *Bollett,* 16 M. & W. 644, 646, 647, 654, where are the references to numerous older cases. "A taverner or vintner was bound as such to sell wholesome food and drink." Ames Lectures on Legal History, page 137, citing also cases from the year books. "If a man sell victuals which is corrupt, without warranty, an action lies, because it is against the Commonwealth." *Roswel* v. *Vaughan,* Cro. Jac. 196, 197. To the same effect in substance are 1 Roll. Abr. 95, 1 Fitz-Herbert's Natura Brevium, 94 C note, supposed to be by Lord Chief Justice Hale, and 1 Bl. Com. 430, 3 Bl. Com. 166. See Williston on Sales, § 241, note 82; *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, 275. The relation between guest and host in a public house is one of contract. It seemingly is the result of those early authorities that it was an implied term or condition of that contract that the food and drink furnished should not be harmful, but appropriate for eating.

There are numerous other illustrations in the law of contracts of an implied condition that the thing sold is merchantable. See, for example, *Murchie* v. *Cornell,* 155 Mass. 60, 63; *Leavitt* v. *Fiberloid Co.* 196 Mass. 440, 451, 453; *Inter-State Grocer Co.* v. *George William Bentley Co.* 214 Mass. 227, 231. Food for immediate use which is not fit to eat is not merchantable as food. This rule was held in *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, to be applicable to cases where a purchaser buys from a dealer food at retail for immediate use. That rule now prevails generally in this country. *Flessher* v. *Carstens Packing Co.* 93 Wash. 48, 54. *Zielinski* v. *Potter,* 195 Mich. 90. *Catani* v. *Swift & Co.* 251 Penn. St. 52, 54. *Nelson* v. *Armour Packing Co.* 76 Ark. 352. *Askam* v. *Platt,* 85 Conn. 448. *Race* v. *Krum,* 222 N. Y. 410, 414. *Osgood* v. *Lewis,* 2 Har. & Gill, 495, 520. *Dulaney* v. *Jones,* 100 Miss. 835, 840. *Parks* v. *C. C. Yost Pie Co.* 93 Kans. 334, 337. See, however, *Crigger* v. *Coca-Cola Bottling Co.* 132 Tenn. 545, 552, and *Green* v. *Ashland Water Co.* 101 Wis. 258, 263–265.

The authorities already cited appear to show that by the common law of England it was an implied term of the contract that the guest should be furnished wholesome food by the proprietor of a public eating house to which he resorted for refreshment.

The historical review, the principles discussed and the ground of decision in *Frost* v. *Aylesbury Dairy Co. Ltd.* [1905] 1 K. B. 608, 613, 614, (although that case arose under the sale of goods act,) afford basis for the conclusion that it has continued to be the law of England to the present. At all events there is nothing to indicate that this common law rule was changed in England before the emigration of our ancestors to the new world. Hence that principle was brought over with them and has become a part of our heritage. This is so whether the origin of that law was general custom or statutory enactment. *Crocker* v. *Justices of Superior Court,* 208 Mass. 162, 166, 167. There is no adjudication or dictum of this court (so far as we are aware) which indicates that the principle has not heretofore and does not now prevail here. The implication in *Emerson* v. *Brigham,* 10 Mass. 197, 200, 201, from the use of the word "victuals," which commonly refers to food ready to eat, and "victualler," which usually is the synonym of publican and means one who serves food or drink prepared for consumption on the premises, *Tyson* v. *Smith,* 9 Ad. & El. 406, 423, is that this principle was then in the mind of the court. The question has not been raised in any of our recent decisions in actions against those who serve food for immediate consumption on their premises. *Bishop* v. *Weber,* 139 Mass. 411. *Crocker* v. *Baltimore Dairy Lunch Co.* 214 Mass. 177. *Wilson* v. *J. G. & B. S. Ferguson Co.* 214 Mass. 265. *Gearing* v. *Berkson,* 223 Mass. 257. Some of these rest on negligence, and others on *Farrell* v. *Manhattan Market Co.* 198 Mass. 271. The exhaustive review of cases in the Farrell opinion, demonstrated that it was the law both of England and of this Commonwealth that in the absence of statute it was an implied term of every sale of provisions by a dealer for immediate use, where the selection was not made by the buyer, that the food was fit for consumption. The principles there discussed and the result there reached appear to be equally applicable to the case at bar. It would be an incongruity in the law amounting at least to an

inconsistency to hold with reference to many keepers of restaurants who conduct the business both of supplying food to guests and of putting up lunches to be carried elsewhere and not eaten on the premises, that, in case of want of wholesomeness, there is liability to the purchaser of a lunch to be carried away founded on an implied condition of the contract, but that liability to the guest who eats a lunch at a table on the premises rests solely on negligence. The guest of a keeper of an eating house or of an innkeeper is quite as helpless to protect himself against deleterious food or drink as is the purchaser of a fowl from a provision dealer. The opportunity for the innkeeper or restaurant keeper, who prepares and serves food to his guest, to discover and provide against deleterious food is at least as ample as is that of the retail dealer in foodstuffs. The evil consequences in the one case are of the same general character as in the other. Both concern the health and physical comfort and safety of human beings.

On principle and on authority it seems to us that the liability of the proprietor of an eating house to his guest for serving bad food rests on an implied term of the contract and does not sound exclusively in tort, although of course he may be held for negligence if that is proved. Without repeating the reasoning of *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, we are of opinion that, on sound legal principles, it bears with equal force upon the facts here presented. Even if there were no common law authority, (which there is, as already pointed out,) it would not be practicable to establish a distinction upon this point which could be supported in reason, between the liability of a retail dealer in meat for immediate consumption and of a victualler who serves food to guests to be eaten forthwith at his own table. Every argument which supports liability of the former tends to sustain liability of the latter with at least equal cogency. They appear to us to rest upon the same footing in principle.

The tendency of recent decisions has been to extend liability of the manufacturer of foods to persons injured by their harmful nature although they purchase from a dealer and have no contractual relation with the manufacturer. *Haley* v. *Swift & Co.* 152 Wis. 570. *Tomlinson* v. *Armour & Co.* 46 Vroom, 748. *Watson* v. *Augusta Brewing Co.* 124 Ga. 121. *Berger* v. *Standard Oil Co.*

126 Ky. 155. *Parks* v. *C. C. Yost Pie Co.* 93 Kans. 334, 337. *Catani* v. *Swift & Co.* 251 Penn. St. 52, 56. *Mazetti* v. *Armour & Co.* 75 Wash. 622. *Jackson Coca Cola Bottling Co.* v. *Chapman,* 106 Miss. 864. See *Ketterer* v. *Armour & Co.* 160 C. C. A. 111 ; 247 Fed. Rep. 921. That tendency points in the direction of stricter liability of those who provide food.

The conclusion here reached is in harmony with *Bark* v. *Dixson,* 115 Minn. 172, *Race* v. *Krum,* 222 N. Y. 410, and *Doyle* v. *Fuerst & Kraemer, Ltd.* 129 La. 838. It ought to be said, however, that none of those decisions discuss the principles here relied on as the basis of our judgment. The results reached and the grounds of decision stated in those cases would seem to require the conclusion here reached. It is the precise point decided in *Leahy* v. *Essex Co.* 164 App. Div. (N. Y.) 903; *S. C.* 148 N. Y. Supp. 1063.

Apparently the larger number of decisions by courts of this country hold that the liability of the innholder and restaurant keeper for furnishing deleterious food rests upon negligence. The earliest adjudication to that point is *Sheffer* v. *Willoughby,* 163 Ill. 518. The opinion in that case is brief and contains no reference to the fundamental conceptions of liability by dealers in food, and does not advert to the responsibility of innkeepers, victuallers and vintners at common law. That case was referred to but not adopted in *Crocker* v. *Baltimore Dairy Lunch Co.* 214 Mass. 177, 179. It has been followed in *Travis* v. *Louisville & Nashville Railroad,* 183 Ala. 415, 424, *Greenwood Cafe* v. *Lovinggood,* 197 Ala. 34, *Merrill* v. *Hodson,* 88 Conn. 314, 321, and *Valeri* v. *Pullman Co.* 218 Fed. Rep. 519. No allusion is made in any of these decisions to the common law authorities and principles to which reference has been made and upon which this judgment in part rests. We feel constrained not to adopt their conclusions, so far as they are inconsistent with the reasoning of this opinion. The decision in *Bigelow* v. *Maine Central Railroad,* 110 Maine, 105, goes upon a different ground, and that here discussed is expressly left open at page 111.

It has been urged that public policy demands that the standard imposed upon a restaurant keeper ought to be that of reasonable care, and nothing more. Earnest argument is made to the effect that otherwise the opportunity for groundless litigation will be

fostered. These considerations, when given their full weight, do not appear to us to overbalance the reasons which have been stated.

The baked beans served to the plaintiff with the stones of the size of and resembling beans might have been found to be not reasonably fit to be eaten. A foreign substance of that sort, with its possibilities for harm to teeth, may have been determined by the jury not proper to be served in food.

It has been argued that it should have been ruled as matter of law that the plaintiff was not in the exercise of due care, and on that ground could not prevail. Due care is not a term of the law of contract, but of torts. This is an action of contract. The obligation resting upon the defendant and accruing to the plaintiff arose out of the contract.

The defendant has urged that, if liability be treated as arising either out of a sale or a breach of contract, the plaintiff fails to show requisite examination on her own part, and that reasonable inspection would have revealed the existing defect in the food, and that under such circumstances as matter of law there can be no recovery. Whatever may be the merit of these contentions under appropriate conditions, they are not pertinent to the facts disclosed on this record. If these contentions in favor of the plaintiff are assumed to be sound, and if further it be assumed that § 15 (3) of the sales act is applicable, to the effect that there is "no implied warranty as regards defects which such examination ought to have revealed," nevertheless it was a question of fact whether rational investigation was made by the plaintiff respecting the character of the food set before her and whether the noxious nature of the thing which caused the harm reasonably ought to have been discovered.

Our conclusion is that, whether the transaction established on the evidence between the plaintiff and the defendant be treated as a sale of food, or as a contract for entertainment where the defendant simply "utters his provision" (to use the neat phrase of *Parker v. Flint,* 12 Mod. 254, employed more than two centuries ago) for the benefit of the plaintiff, there was a case to be submitted to the jury.

In accordance with the terms of the report and with leave reserved with the consent of the jury, pursuant to St. 1915,

c. 185, amending R. L. c. 173, § 120, a verdict is to be entered for the plaintiff for $150.

*So ordered.*

CROSBY, J. I cannot agree with the decision of the majority in this case; and because I believe it to be wrong in principle and contrary to the great weight of authority, I feel constrained to express my dissent.

The decision in effect is, that an innkeeper or the keeper of a restaurant who serves food to a guest is liable as an insurer of the safety of the person of his guest against injury, although he may be wholly free from any negligence in providing and serving such food.

The plaintiff testified that she entered the defendant's restaurant and there ordered of a waitress "New York baked beans and corned beef," which were served to her. She further testified, "I started to eat the food and there were two or three dark pieces which I thought were hard beans, that is, baked more than the others, and I put two in my mouth and bit down hard on them, and . . . I was hurt. . . . I took those things out of my mouth and found they were stones."

There was no evidence of an express warranty or that the defendant knew of the presence of the stones in the food, and unless the plaintiff can recover upon an implied warranty that the food served to her was wholesome and fit for consumption, the defendant is not liable.

The question then presented is whether the keeper of a restaurant is an insurer of the quality of the food which he serves or whether he is liable only for failure to exercise reasonable care in providing and serving food so furnished. Before the decision in this case, the question does not appear to have been decided in this Commonwealth. The sales act, St. 1908, c. 237, § 15, (which is declaratory of the common law so far as pertinent to this case,) cannot, in my opinion, be held to apply to a case where food is furnished by a keeper of a restaurant to a customer or by an innkeeper to his guest, because food so served does not constitute a sale thereof; while the customer may consume so much as he desires, he has no right to carry away any portion thereof which he orders but does not eat, nor does the title to such food pass to

him so that he can sell or give it to another. The charge made for the food is not limited to the food consumed, but includes the furnishing of a place where it may be eaten and the service rendered in connection therewith. Beale on Innkeepers, § 169. *Parker* v. *Flint,* 12 Mod. 254. *Merrill* v. *Hodson,* 88 Conn. 314. *Valeri* v. *Pullman Co.* 218 Fed. Rep. 519.

Nor is the defendant a "dealer" within the meaning of the sales act or independently of it. A dealer is defined as a trader, especially a person who makes a business of buying and selling goods. In *Saunderson* v. *Rowles,* 4 Burr. 2064, 2068, it was said of a victualler, "He makes no particular contract, like a trader. He cannot be said to get his living by buying and selling, as a trader does. He buys, only to spend in his house: and when he utters it again, it is attended with many circumstances additional to the mere selling price."

In the case of *Farrell* v. *Manhattan Market Co.* 198 Mass. 271, this court, after tracing the history of the law in England upon this question and referring to many cases, said at page 280: "The rule now established in England is that, in the sale of an article of food by one not a dealer, there is no implied condition or warranty that it is fit to be eaten. . . . Since the sale of goods act, if the sale is made by one not a dealer, there is no liability, by force of § 14." St. 56 & 57 Vict. c. 71, § 14. Section 15 of the Massachusetts act is similar to § 14 of the English act above referred to. And in *Giroux* v. *Stedman,* 145 Mass. 439, it was held that the defendants who were farmers and killed and sold two hogs, the produce of their farms, "were not common dealers in provisions, or marketmen," and that there was not an implied warranty that the hogs were fit for food, even if sold with knowledge that they were to be used for that purpose. *Howard* v. *Emerson,* 110 Mass. 320.

It was said in *Gearing* v. *Berkson,* 223 Mass. 257, on the authority of *Farrell* v. *Manhattan Market Co., supra,* that "Even before the enactment of this statute, it was recognized as the law in this Commonwealth, that where the buyer at a shop relies on the skill and judgment of the dealer in selecting food, and it is made known to the dealer that his knowledge and skill are relied on to supply wholesome food, he is liable if it is not fit to be eaten; while, in case the buyer himself selects provisions, the dealer's implied warranty does not go beyond the implied assertion that he believes

the food to be sound." It cannot be questioned that this doctrine is sound as applied to a dealer; but I believe it has no application to the serving of food by an innkeeper or the keeper of a restaurant, because the food so furnished is not a sale and because the person who so furnishes the food is not a dealer. The question is, whether one who furnishes food to be consumed on the premises is an insurer that it is sound and wholesome and free from deleterious substances. That a right of action, based upon negligence, to recover for the harmful consequences resulting from a sale of unwholesome food will lie, is well established. *Crocker* v. *Baltimore Dairy Lunch Co.* 214 Mass. 177, and cases cited.

While innkeepers, common carriers and others are held absolutely liable under certain circumstances, so far as I am aware an innkeeper never has been held to be an insurer of the quality of the food served to his guests, nor is a common carrier of passengers liable as an insurer of their safety; so to extend the rule as to innkeepers and keepers of restaurants, I believe to be contrary to the common law and against the weight of authority in England and in this country. *Parker* v. *Flint, supra. Crisp* v. *Platt,* Cro. Car. 549. *Bigelow* v. *Maine Central Railroad,* 110 Maine, 105. *Merrill* v. *Hodson, supra. Sheffer* v. *Willoughby,* 163 Ill. 518. *Travis* v. *Louisville & Nashville Railroad,* 183 Ala. 415. *Clancy* v. *Barker,* 66 C. C. A. 469; 131 Fed. Rep. 161. *Valeri* v. *Pullman Co., supra.* 22 Cyc. 1081. 16 Am. & Eng. Enc. of Law, (2d ed.) 547. Beale on Innkeepers, § 169. Burdick on Sales, (2d ed.) 113.

In Beale on Innkeepers, § 169, the rule is stated that "He [an innkeeper] is not an insurer of the quality of his food, but he would be liable for knowingly or negligently furnishing bad and deleterious food. As an innkeeper does not lease his rooms, so he does not sell the food he supplies to the guest. It is his duty to supply such food as the guest needs, and the corresponding right of the guest is to consume the food he needs and to take no more. Having finished his meal, he has no right to take food from the table, even the uneaten portion of the food supplied to him; nor can he claim a certain portion of food as his own, to be handed over to another in case he chooses not to consume it himself. The title to food never passes as a result of an ordinary transaction of supplying food to a guest." *Merrill* v. *Hodson, supra.*

It seems to me that neither under the sales act nor at common

law can the serving of food by an innkeeper or the keeper of a restaurant be deemed to be a sale of goods. The act, § 1, defines a sale of goods to be "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." For the reasons stated, such a transaction cannot be held to be a "sale." Nor does the food so supplied seem to me to be "goods" as that word is defined in § 76 of the act, namely: "'Goods' include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale."

The transaction involved in serving a guest with food for his consumption in a restaurant is not, in my opinion, an agreement for the transfer of the general property of the food so furnished and appropriated by the guest for the satisfaction of his appetite, involving as it does the personal service rendered in supplying the food and furnishing a place with the things necessary to consume it. If the furnishing of food by an innkeeper or restaurateur is considered as a sale, as previously pointed out, even in the case of sales of food by one not a dealer, there is no implied condition or warranty that it is fit to be eaten, and this was true before as well as since the sales act, § 15. *Farrell* v. *Manhattan Market Co.,* *supra.* *Giroux* v. *Stedman, supra.* *Jones* v. *Just,* L. R. 3 Q. B. 197. *Emmerton* v. *Mathews,* 7 H. & N. 586. The law relating to the sale of provisions is the same as in case of the sale of other chattels. *Bigge* v. *Parkinson,* 7 H. & N. 955.

The case of *Sheffer* v. *Willoughby,* 163 Ill. 518, decides the precise question involved in the present case. The plaintiff was made ill by eating oysters served in the defendant's restaurant. The court held that the defendant was not an insurer of the soundness of its food and could not be charged with liability upon an implied warranty, but could be held liable only for negligence, citing the earlier case of *Wiedeman* v. *Keller,* 58 Ill. App. 382.

In *Travis* v. *Louisville & Nashville Railroad, supra,* the plaintiff was made ill by eating unwholesome food furnished by the defendant in one of its dining cars. It was held that there is no warranty of the fitness of food served by a restaurant keeper provided it belongs to that class of food which is generally fit for human consumption and that the defendant was only liable for failure to

exercise reasonable care in the selection and preparation of the food.

The same court, in *Greenwood Cafe* v. *Lovinggood*, 197 Ala. 34, held that the keeper of a hotel, dining car, cafe or other public eating place, engaged in serving food to customers, is bound to use due care in furnishing such food, citing *Travis* v. *Louisville & Nashville Railroad, supra.*

The precise question involved in the present case was considered in the recent case of *Merrill* v. *Hodson*, 88 Conn. 314. The plaintiff was made sick by eating canned sweetbreads, alleged to have been unwholesome, which were served to her by the defendants in their restaurant. It was held that the furnishing of food and drink by a restaurant keeper to a customer for immediate consumption upon the premises is not a sale of the food either under the sales act of that State, Pub. Sts. of 1907, c. 212 (which is substantially the same as our act), or at common law, and that therefore, under § 15 of the act, there was not an implied warranty of quality or soundness of the food furnished. The court intimated that an action for negligence is the only remedy for the consequences of eating unwholesome food supplied by the keeper of a restaurant or inn in the usual course of his business.

In *Bigelow* v. *Maine Central Railroad, supra,* the plaintiff alleged that she suffered injury to her health by eating unwholesome canned asparagus, served to her by the defendant in its dining car. She claimed that the defendant was an insurer of the quality of the food which it served. The court held that the defendant was not liable in the absence of an express warranty.

The case of *Valeri* v. *Pullman Co., supra,* was an action brought to recover for personal injuries sustained by reason of eating unwholesome food in a dining car of the defendant. The court in that case said, at page 524: "In my opinion there is no well-considered authority and no public policy which afford any justification for imposing upon the defendant the absolute liability of an insurer of its food, and I deem that the only obligation of the defendant, or any keeper of a restaurant or inn, is to exercise the reasonable care of a prudent man in furnishing and serving food." "It seems to me idle, in determining this question, to seek analogies derived from implied warranties in sales of goods. In the first place, one is met at the outset by the legal theory which

has long prevailed that food furnished by a victualler is not a sale."

In discussing this question, it was said by the court in *Clancy* v. *Barker*, 131 Fed. Rep. 161, at page 163, that "The general rule of law governing the liability of innkeepers when these defendants made their agreement with the plaintiff, the rule which had received the approval of every court which had ever decided the question, so far as we have been able to discover, was that an innkeeper was not an insurer of the safety of the person of his guest against injury, but that his obligation was limited to the exercise of reasonable care for the safety, comfort, and entertainment of his visitor."

The contention that an innkeeper or victualler at common law impliedly warrants the wholesomeness of food furnished cannot, in my opinion, be sustained. An examination of the older English cases upon this subject will show, I think, that where a liability has been held to exist, it rests upon the ground either that the person furnishing the food or drink knew that it was unwholesome, or because it was furnished in violation of an ancient statute which imposed a penalty for furnishing such food or drink and therefore was "against the Commonwealth."

In the leading case of *Burnby* v. *Bollett*, 16 M. & W. 644, where all the older authorities are collected, it was held that, where a farmer bought in the public market the carcass of a pig for consumption as food and afterwards sold it to another without warranty, although it was unfit for human consumption, no warranty of soundness was implied by law between the last seller and the purchaser.

Mr. Benjamin, in his book on Sales, (4th ed.) at page 671, after referring to this case, states that "The notion of an implied warranty in such cases appears to be an untenable inference from the old statutes which make the sale of unsound food punishable. . . . It is submitted that it results clearly from these authorities that the responsibility of a victualler, . . . for selling unwholesome food does not arise out of any contract or implied warranty, but is a responsibility imposed by statute, that they shall make good any *damage caused* by their sale of unwholesome food." The statute referred to in *Burnby* v. *Bollett, supra,* was swept away by St. 7 & 8 Vict. c. 24.

In *Roswel* v. *Vaughan*, Cro. Jac. 196, cited in the opinion in the present case, it was said that "if a man sells victuals which is corrupt, without warranty, an action lies, because it is against the Commonwealth;" the ground of the decision obviously being that the liability rests upon the violation of the statute in making such a sale punishable as a criminal offence. The action was on the case in the nature of deceit in which it was alleged that the defendant falsely represented that he was the incumbent of a vicarage and had a right to the tithes, and which he undertook to sell to the plaintiff but without express warranty. It was held that the action would not lie.

It is stated by Blackstone (vol. 1, page 430), "So likewise if the drawer at a tavern sells a man bad wine, whereby his health is injured, he may bring action against the master," and cites 1 Roll. Abr. 95, which refers to a statement in the Year Book, 9 Hen. VI, page 53: "If a taverner sells wine, knowing it to be corrupt, to another as sound, good and not corrupt without any express warranty, still an action of deceit lies against him for there is a warranty in law." There would seem to be no doubt as to the correctness of the rule stated as it expressly appears in the case cited that the innkeeper knew the wine was unwholesome.

In referring to these old English cases, it is stated in Williston on Sales, §§ 241, 242, "There is considerable talk in the early law in regard to a special obligation of warranty in the sale of provisions more extensive than that arising in the sale of other articles. The old authorities seem to have been rested, in part at least, upon the language of an old statute. But whatever the basis of the doctrine it was laid down broadly by Blackstone, that 'in contracts for provisions it is always implied that they are wholesome, and if they be not, the same remedy (damages for deceit), may be had.' This statement is frequently repeated and relied on as a ground for decision. . . . It is doubtful, however, if it would now generally be held that there was such a warranty unless the seller was a dealer." Burdick on Sales, (2d ed.) 113.

Whatever may have been the reason for the decisions in the English cases above referred to, and many others cited in the opinion in the present case, it seems to me that there is no analogy to be drawn from them in favor of the contention that there is an implied warranty of fitness in the furnishing of food by an inn-

keeper or victualler, because such a transaction is in no sense a sale, as established by decisions rendered by the English courts more than two centuries ago, the soundness of which has never been questioned in subsequent English cases. *Crisp* v. *Platt, supra. Saunderson* v. *Rowles, supra. Parker* v. *Flint, supra.*

Without referring in detail to the decisions cited in the opinion of the majority of the court, it seems to me they all are distinguishable from the case at bar, either because the ground of liability in the cases cited is based upon negligence or because the actions were brought against persons who were dealers.

The case of *Commonwealth* v. *Worcester*, 126 Mass. 256, which held that the defendant might be convicted of keeping and maintaining a tenement used for the illegal sale and keeping of intoxicating liquor, under Gen. Sts. c. 87, § 6, if he furnished such liquor with meals supplied to customers, does not seem to me conclusive upon the question whether an innkeeper or keeper of a restaurant who makes a sale of food or drink to guests, is liable in an action of contract upon an implied warranty. Apparently the only question in that case was, whether the furnishing of the liquor for a price which included the price of the meal could in any event be regarded as a sale within the meaning of the statute. The question whether the furnishing of food or drink by an innkeeper or victualler to a guest, in good faith, did or did not constitute a sale with an implied warranty that it was wholesome and fit for food for human consumption, was not raised nor considered in the brief opinion.

The case of *Commonwealth* v. *Warren*, 160 Mass. 533, was' a complaint against the defendant for a sale of milk not of the standard quality, under St. 1886, c. 318, § 2. The milk was sold in connection with food furnished as a part of a meal and the price paid included both. The question whether the transaction amounted to a sale would seem to have been wholly immaterial to the decision, as the statute (§ 2) in part provided that the sale, exchange, delivery, or having custody or possession with intent to sell or exchange, of milk not of standard quality is a criminal offence. Accordingly a delivery of such milk would be a violation of the statute even if there were no sale. The question whether the transaction was a sale by an innkeeper or victualler which

made him liable upon an implied warranty was not considered nor decided, so far as appears by the record.

I do not think that the case of *Commonwealth* v. *Worcester*, *supra*, and the case of *Commonwealth* v. *Warren*, *supra*, involving, as they do, violations of criminal statutes, should be regarded as decisive in cases involving civil liability arising from contract which it is plain the court never intended to pass upon. Manifestly the court never intended by the judgment in those cases to decide that the furnishing of food to a guest created a contract of sale which carried with it an implied warranty that the food furnished was sound. There seems to me to be no controlling reason for holding that we are bound by these cases or that they are not clearly distinguishable from the case at bar.

The only cases in this country or in England which, so far as I am aware, decide the precise point in the present case and hold that there is an implied warranty in the furnishing of food, are *Leahy* v. *Essex Co.* 164 App. Div. (N. Y.) 903, and *Rinaldi* v. *Mohican Co.* 171 App. Div. (N. Y.) 814. The former was decided by the Appellate Division of the Supreme Court of New York on the authority of *Race* v. *Krum*, 162 App. Div. (N. Y.) 911. The latter has recently been decided by the New York Court of Appeals, 222 N. Y. 410. That decision holds that as the defendant, a druggist, manufactured the ice cream which he sold to the plaintiff and which made him ill, the defendant could be found liable. It is to be observed that the court carefully refrained from deciding the question which has arisen in the case at bar, when it was said, at page 413: "In this connection, however, it must be borne in mind that we are not dealing with the liability of hotel proprietors, restaurant keepers, dining car managers, or people engaged in business of that kind, but are considering solely the liability of a dealer who makes or prepares the article that he is selling." This statement of the liability of a manufacturer is in accord with the rule stated in *Jones* v. *Just, supra, Leavitt* v. *Fiberloid Co.* 196 Mass. 440, *Haley* v. *Swift & Co.* 152 Wis. 570. It is apparent that the two cases above referred to, decided by the Appellate Division of the Supreme Court of New York, are not of controlling importance.

While the case of *Farrell* v. *Manhattan Market Co., supra,* is cited and relied on by the plaintiff in support of her contention, it

seems to me to mark clearly the distinction between a sale of provisions by a dealer, and the furnishing of cooked food by an innkeeper or restaurateur for immediate consumption upon the premises. It is evident that this court did not in that case decide that such persons were "dealers," when it is stated on page 286: "Whatever may be the rule in respect to caterers in serving meals, there is no case in which it has been held that in the sale of provisions by a dealer the test of his liability is negligence." *Merrill* v. *Hodson*, 88 Conn. 314, 321.

In referring to the case of *Bishop* v. *Weber*, 139 Mass. 411, it is stated in the opinion in the Farrell case at page 286: "All that was decided in that case was that the declaration was good. Whether negligence is the ground for holding a caterer or innkeeper liable for serving poisonous food was not discussed."

In the Farrell case (page 280) it is also stated that "The rule now established in England is that, in the sale of an article of food by one not a dealer, there is no implied condition or warranty that it is fit to be eaten. . . . Since the sale of goods act, if the sale is made by one not a dealer, there is no liability, by force of § 14." And in referring to the law of this Commonwealth, it is stated (page 283) that "There is no implied term or condition that articles of food sold by one not a dealer are fit to be eaten. *Howard* v. *Emerson*, 110 Mass. 320, and *Giroux* v. *Stedman*, 145 Mass. 439."

The general rule of law, which has always prevailed, so far as I have been able to discover, is that innkeepers and restaurateurs are not insurers of the safety of their guests whom they serve with food, but that their obligation is limited to the exercise of reasonable care in the furnishing and serving such food.

It does not seem to me that public policy or justice demands that a restaurant keeper or innkeeper should be held to warrant impliedly the wholesomeness of food served by him, making him in effect an insurer of its fitness for consumption, no matter how carefully it may be prepared and served. I am of opinion that the absolute liability which the opinion of the majority of the court imposes is not necessary for the protection of the public, but is apt to result in the prosecution of groundless claims which it will be difficult, if not impossible, to meet.

The fact that this is the first case that has ever arisen in this

Commonwealth where it has been attempted to charge the keeper of a restaurant or a hotel upon an implied warranty respecting the quality of food furnished, would seem to make it plain that the rights of individuals and the public are amply protected by holding those engaged in those occupations liable only for negligence.

If it be deemed necessary, for the protection of patrons of restaurants, hotels, and other places where food is served for immediate consumption upon the premises, to hold persons engaged in such occupations as insurers, it would seem to me to be a subject for legislative rather than judicial determination.

I believe the decision of the majority is wrong in principle, and that it imposes an unjust and unnecessary burden upon a large number of persons engaged in a useful and necessary business. I am also constrained to dissent from the decision because I believe it is contrary to the rule as laid down by the English courts from the earliest times, and is at variance with the decisions of the courts of the United States and of the courts of last resort in several States.

So far as I am aware, the result reached in the opinion is not supported by the decision of any court of last resort where the precise question in the case at bar has been considered.