## COOK and MOREHOUSE v. DODGE and JOHNSON.

The privilege accorded by art. 3175 C. C. for supplies or provisions furnished to the debtor or his family, does not apply to such supplies when furnished to a hotel.

Servants employed in a large hotel are not entitled to the privilege allowed by art. 3172 C. C. That article applies only to such servants as are employed in the service of a family or the private establishment of a person keeping house.

APPEAL from the Fifth District Court of New Orleans, Buchanan, J. William Dunbar and P. C. Wright, for appellants. Pitot, Livingston,

35*

*J. D. Mix, Van Mater, Bemiss, G. W. Christy, Emerson, Wolfe* and *Single-ton, Clarke, Hornor, Haggan, J. C. Wright* and *D. S. Bryon,* for appellees. The judgment of the court was pronounced by

Slidell, J. The defendants kept a large tavern in the city of New Orleans. The furniture and other movable effects contained in it, being seized on execution, were sold ; and various creditors claimed privileges upon the fund. The court ordered it to be applied as follows : 1. To the payment of costs. 2. To the payment of the landlord's claim for rent. 3. To the payment of vendors of the respective portions of the furniture. 4. To the payment of creditors who had levied executions.

These creditors absorbed the entire fund, leaving nothing for the servants and furnishers of provisions, whom the court ranked after the fourth class above named.

*Howland* was a creditor for wages ; *Wood* for groceries alleged to have been sold to the defendants for the St. Louis Hotel, within the previous six months, to the amount of $3906 36. They have appealed.

*Wood* contends that the privilege upon movables accorded by the article 3175 of the Civil Code, takes precedence of the privilege acquired by seizure under *fieri facias.* We do not think it necessary to decide the question, inasmuch as in our opinion *Wood* has not a privilege under that article. The intention of that article, we think, was to give a privilege for provisions and liquors furnished to a family or private establishment. It was an encouragement to the dealer to supply the necessaries of life to a family or individual, who otherwise might suffer, and was adopted, as it seems to us, as much in the interest of the debtor as of the creditor. The case of large supplies to a tavern-keeper for consumption by his guests does not fall within the intendment of the code. In the interpretation of the article 3175, reference must be made to article 3158, No. 5. Its language is, "supplies of provisions made to the debtor or his family, during the last six months by retail dealers, such as bakers, butchers and grocers." In commenting upon the similar article of the Napoleon Code, Duranton observes : Le privilége étant donné pour les fournitures de subsistance faites au débiteur et à sa famille, il suit de là qu'il n'a pas lieu pour les fournitures faites par un boucher ou un boulanger, à un aubergiste, si ce n'est toutefois pour la portion de ces subsistances qui serait jugée avoir probablement été consommée par la famille du débiteur, mais non pour le surplus qui a été consommé par les personnes qui ont été reçues dans l'auberge. Vol. 19, No. 65. The claim of *Howland* is reserved for future consideration.

It is therefore decreed, that the said *Wood* take nothing by his said appeal, and that he pay one-half of the costs of said appeal. And it is further ordered, that the case as to *Howland* remain under advisement.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## Same Case.

THE appellant *Howland* is the assignee of the claims of several persons who were employed as servants in the St. Louis Hotel, a large tavern kept by *Dodge* and *Johnson,* in New Orleans. He claims a general privilege on movables under the article 3172 of the Civil Code. This article, which is explanatory of the fourth class or enumeration found under the article 3158, is in these

words: "Servants or domestics are those who receive wages and stay in the house of the person paying and employing them for his service or that of his family; such are valets, footmen, cooks, butlers and others who reside in the house." In the French text the language is: "On appelle domestiques ou gens de service ceux qui reçoivent des gages et demeurent dans la maison de la personne qui les paie et les emploie à son service personnel, ou à celui de sa famille. Tels sont les valets, laquais, cuisiniers, maîtres-d'hôtel au autres qui sont à demeure dans la maison.

The interpretation in matters of privilege is strict, because privileges are in derogation of common right. The general rule is that the property of the debtor is the common pledge of his creditors, C. C. 3150, and therefore privileges are to be allowed only when expressly granted by the code. Ib. 3152.

We think it was the intention of the lawgiver in the article relied upon to protect domestic servants, that is to say those employed in the service of a family or the private establishment of a person keeping house, and that the servants of a place of public entertainment were not contemplated. We took a similar view of the claim of *Wood* for groceries furnished for the St. Louis Hotel.

It is perhaps to be regretted that all persons who earn their bread by their bodily labor, have not been protected by the lawgiver; but it will be found upon examining the code that such is not the case. See also *Stevens* v. *Sawyer*, 3d Ann. 429.

It is therefore decreed, that the judgment as to *Howland* be affirmed; and that half the costs of the appeal be paid by him.