### VALERI v. PULLMAN CO.

(District Court, S. D. New York. December 30, 1914.)

Food (§ 25*)—Liabilities for Injuries—Warranty of Quality.

The proprietor of a buffet car on a railroad is not an insurer of the wholesomeness of the food served thereon, and can only be held liable for injury to a patron from the consumption of deleterious food so furnished on the ground of a failure to exercise reasonable care in respect to its quality and preparation.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 18; Dec. Dig. § 25.*]

At Law. Action by Delia M. Valeri against the Pullman Company. On motion by defendant to dismiss complaint. Motion sustained.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Carl S. Brown, of New York City (Grant Hoerner and Adolph Bangser, both of New York City, of counsel), for plaintiff.

Worcester, Williams & Saxe, of New York City (Edwin D. Worcester, of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. This was an action to recover damages for personal injuries sustained by plaintiff through eating food served to her by defendant upon its buffet car. The complaint alleged that the food was unwholesome, but contained no allegation of negligence on the part of the defendant, and sought to recover upon an alleged implied warranty that the food was fit for consumption. At the close of the entire case defendant moved to dismiss the complaint upon the ground:

"That, even if the food were unwholesome, there is nothing to hold the defendant liable for the existence of that fact; that the defendant was not liable for any express or implied warranty as to the wholesomeness of the food served, but was only liable for due care and diligence in the careful preparation of the same; and that no evidence whatever has been given to show that the defendant failed in any respect in the care and diligence required in the preparation and serving of that food."

The court reserved its decision upon this ground and took a special verdict, which resulted in a finding by the jury that the food served to the plaintiff by the defendant was unwholesome, that the injuries complained of by the plaintiff were the proximate result of consuming such food, and that the plaintiff was entitled to $2,000 for injuries thus sustained. The defendant now asks to have the complaint dismissed, and the plaintiff moves for judgment on the special verdict. The question, squarely raised, therefore, is whether the liability of the defendant, who apparently differs in no wise from any other person keeping a restaurant, is that of an insurer of its food, or whether it is only liable to exercise reasonable care in providing and serving such food as it offers for consumption.

It seems to me idle, in determining this question, to seek analogies derived from implied warranties in sales of goods. In the first place, one is met at the outset by the legal theory which has long prevailed that food furnished by a victualer is not a sale. As early as 1701 Sergeant Wright, in the case of Parker v. Flint, 12 Mod. 254, noted that an innkeeper "does not sell but utters his provision"; and Prof. Beale, in his book on Innkeepers and Hotels, § 169, says:

"As an innkeeper does not lease his rooms, so he does not sell the food he supplies to his guests. It is his duty to supply such food as the guest needs, and the corresponding right of the guest is to consume the food he needs and to take no more. Having finished his meal, he has no right to take food from the table, even the uneaten portion of the food supplied to him; nor can he claim a certain portion of food as his own, to be handed over to another in case he chooses not to consume it himself. The title to food never passes as a result of an ordinary transaction of supplying food to a guest; or as it was quaintly put in one old case 'he does not sell but utters his provision.'"

The same doctrine was applied to the food furnished by an innkeeper in the old case of Crisp v. Pratt, Cro. Car. 549. Prof. Bur-

dick, in his book on Sales (2d Ed. page 113), expresses a like view, and the recent case of Merrill v. Hodson, 88 Conn. 314, 91 Atl. 533, decided by the Supreme Court of Errors of Connecticut, also adopts the same theory.

But whether or not the transaction in question was a sale seems to me immaterial. Indeed, it is not impossible that food purchased upon a Pullman car à la carte differs from the food supplied by an innkeeper under the older custom of furnishing a meal to his guest table d'hôte, and it may be that in a Pullman car, where a certain specific article of food is ordered and paid for, the transaction is a sale. But, whether or not that be the case, the law of implied warranties that articles sold are merchantable or fit for the purpose intended is totally inapplicable to such a cause of action as the present one. If the food was entirely inferior to that ordered, there would probably be upon the mercantile theory no other damage than the difference between the food furnished and good food of the sort ordered. If the food was unfit for consumption, the remedy would be an action to recover back the purchase money, if it had been paid.

This discussion is really aside from the main question in this case, and is only indulged in by reason of the fact that it has occupied the attention of the courts in so many opinions, and been discussed so fully by counsel. The case at bar comes down to this: In the absence of any specific authority in the federal decisions, is there any ground in reason for imposing upon a restaurant keeper an obliga- tion to furnish wholesome food to his patrons at all hazards; that is to say, is his obligation that of an absolute insurer of his food? Of one thing I feel reasonably clear, that no such obligation was ever imposed upon innkeepers or victualers under the English common law. In spite of the most exhaustive briefs of counsel in this case, no deci- sion of the English courts has been pointed out, indicating the ex- istence of such an obligation, and it seems to me most unlikely that such an obligation was ever recognized in the common law, using that word now in a historical sense, or it would have been enforced in numerous adjudicated cases. The opportunity for actions involving the breach of such an obligation has been far too common, and the absolute liability long imposed upon an innkeeper in respect to the goods of his guests has furnished too close an analogy to such an obligation, to permit the innkeeper to escape if the obligation had ever been thought to exist at common law.

The courts have enforced certain rules of absolute liability in the case of innkeepers, common carriers, owners of vicious animals, man- ufacturers of poisonous drugs, and in England, under the doctrine enunciated in Rylands v. Fletcher, 3 H. L. 330, in the case of persons who bring upon their lands elements likely to do mischief if they should escape.

My own feeling is that protection to the public lies not so much in extending the absolute liability of individuals, as in regulating lines of business in which the public has a particular interest in such a way as reasonably to insure its safety. In other words, pure food laws, and rigorous inspection of meats, canning factories, and other

sources of food supply, would seem to me a much more effective way of protecting the public than by the imposition of the liability of an insurer upon those who furnish food. The former method corrects the evil at its source. The latter method only imposes an obligation in cases which ex hypothesi cannot be guarded against by the individual by the exercise of due care. It shifts the loss from the person immediately suffering the injury to a person who has neglected no precaution in supplying the food. This certainly is not in accord with the general tendencies of the common law. I am inclined to think that the imposition of such an obligation would tend to lead in the long run to the prosecution of unfounded claims, rather than to the protection of individuals or the public.

I have thus discussed what seemed to me the general principles involved in this case, as well as my own views of public policy, because of the fact that no decision appears to have been rendered in regard to this liability by any court of the United States. There have been numerous cases in state courts holding that the liability of one who furnishes goods to the public is to exercise due care and nothing more. The principal cases adopting this view are the following: Bigelow v. Maine Central R. R., 110 Me. 105, 85 Atl. 396, 43 L. R. A. (N. S.) 627; Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 438; Travis v. L. & N. R. R. Co. (Ala.) 62 South. 851 (decided in June, 1913; Merrill v. Hodson, 88 Conn. 314, 91 Atl. 533 (decided September, 1914). Judge Sanborn in the case of Clancy v. Barker, 131 Fed. 163, 66 C. C. A. 471, 69 L. R. A. 653, defined the general liability of an innkeeper, in respect to the person of his guests, as follows:

"An innkeeper was not an insurer of the safety of the person of his guest against injury, but * * * his obligation was limited to the exercise of reasonable care for the safety, comfort, and entertainment of his visitor."

Professor Beale, in his book on Innkeepers (section 169), says:

"The innkeeper is not an insurer of the quality of his food, but he would be liable for knowingly or negligently furnishing bad or deleterious food."

In the state of New York there has been no decision by the highest court passing directly upon the question involved in this case, but there have been two decisions of the Appellate Division, Third Department, within the past year. In Race v. Krum, 162 App. Div. 911, 146 N. Y. Supp. 197, the plaintiff became sick from the effects of eating strawberries and cream at the defendant's soda water fountain, alleged to have been poisonous and full of ptomaines. The answer admitted an allegation in the complaint that the defendant, in selling the cream to plaintiff, "warranted it to be wholesome." Upon an appeal from a judgment for the plaintiff, the judgment was affirmed by a majority of three to two. The dissenting judges delivered an opinion by Woodward, J., which is the only opinion reported, in which he says:

"The very interesting question of how far the purveyor of ice cream impliedly warrants the product to be free from poisons which can be detected only by bacteriological and chemical analysis, if at all, is not presented by this record, for the answer admits a general warranty as broad as that

alleged in the complaint, and rests upon a denial of the breach of such warranty. Whether, under a proper pleading, this court would be willing to hold that a person selling ice cream impliedly warranted the same to be free from poisonous ptomaines, which could not be detected in the practical conduct of the business, and which no reasonable care could exclude, is purely academic here, for the defendant has consented by his pleadings to stand upon the broad proposition that he did warrant the quality in the same degree that the plaintiff has alleged."

It would appear, therefore, that the question of whether there was any implied warranty was not up for decision, but upon a motion for a reargument, reported in 163 App. Div. 924, 147 N. Y. Supp. 818, the court in a per curiam opinion held that the admission in the answer was only intended as the admission of an implied warranty, but added that the motion for a reargument should be denied, because the majority of the court was of the opinion that as a matter of law there was an implied warranty that the food was fit for consumption.

In Leahy v. Essex Co. (Sup.) 148 N. Y. Supp. 1063, also in the Appellate Division, Third Department, a plaintiff, who ate a piece of pie in defendant's restaurant and was injured thereby, brought action alleging a sale of the pie and an implied warranty by defendant of its wholesomeness. The complaint was dismissed, on the ground that it could not be determined whether her sickness was due to that particular fact. The Appellate Division reversed the judgment and ordered a new trial, saying, however, upon the subject of implied warranty, that it had held that there was such a warranty under somewhat similar circumstances in the case of Race v. Krum, 162 App. Div. 911, 146 N. Y. Supp. 197.

There was no opinion by the majority of the court in the first case, and upon motion for reargument there was no discussion of the important question involved and no citation of authorities. In the second case there was likewise no discussion of the question, and no citation of authority other than that of the first case. It can be readily seen, therefore, that these two cases, which are the only New York authorities sustaining the plaintiff's contention, are not of great weight.

The source from which this doctrine of implied warranty was derived was the old case of Van Bracklin v. Fonda, 12 Johns. (N. Y.) 468, 7 Am. Dec. 339, decided in 1815, and frequently quoted since. That was the case of a sale of meat known by the defendant to be unwholesome, by which plaintiff's family were made sick. The principle involved was obviously entirely different from that in the present case, and the action was apparently one for deceit. The court, however, remarked in the course of its discussion that, in the sale of provisions for domestic use, the vendor is bound to know that they are sound and wholesome. That this dictum did not represent the New York law was stated by the New York Court for the Correction of Errors in Wright v. Hart, 18 Wend. 449.

Inasmuch as the highest court of New York has never passed upon the question at issue, and I find that its expressions in regard to the matter are not altogether harmonious, I have felt at liberty to reach an independent judgment as to what is the common-law applicable to

the situation, irrespective of the two decisions of the Appellate Division which. I have referred to.

In my opinion there is no well-considered authority and no public policy which afford any justification for imposing upon the defendant the absolute liability of an insurer of its food, and I deem that the only obligation of the defendant, or any keeper of a restaurant or inn, is to exercise the reasonable care of a prudent man in furnishing and serving food.

I therefore direct that the complaint be dismissed upon the merits.