[Civ. No. 2869. Second Appellate District, Division Two.—February 4, 1919.]

## ROBERT G. LOUCKS, Appellant, v. G. F. MORLEY, Respondent.

RESTAURANT-KEEPER—SELLING PROVISIONS FOR DOMESTIC USE.—A restaurant-keeper is not one who makes a business of selling provisions for domestic use within the meaning of section 1775 of the Civil Code.

ID.—SALES—WARRANTY OF QUALITY OF FOOD FURNISHED.—There is no implied warranty of the quality of food furnished by a restaurant-keeper to a customer for immediate consumption, since the transaction does not constitute a sale, but a rendition of service.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial Fred H. Taft, Judge. Affirmed.

Robert G. Loucks, *in pro. per.,* for Appellant.

Edwin A. Meserve and Shirley E. Meserve for Respondent.

THOMAS, J.—This is an action brought to recover damages for the breach of an implied warranty, under section 1775 of the Civil Code of the state of California, for alleged poisoning of plaintiff by reason of his having eaten rice pudding as a part of his meal at the restaurant of defendant, and because of the sickness caused thereby, and his subsequent inability for a long period to practice his profession as an attorney at law.

From the record in this case it appears that on the fourteenth day of August, 1911, plaintiff went to the restaurant of said defendant, at about noon of said day, and became the

guest of said defendant at said restaurant, and then and
there, as such guest, bought and paid for and ate his noonday
meal, which consisted of one order each of ham and egg sand-
wich, rice pudding, and tea. That said meal was furnished
to said plaintiff by said defendant as a guest at said restau-
rant, and not otherwise. That about six and one-half hours
after plaintiff had eaten his said meal, as aforesaid, he became
ill, at said time being taken with cramps and an attack of
dysentery, which was followed by a continuation of said ill-
ness, accompanied by vomiting. That the plaintiff was there-
after seriously ill for a period of thirty days, during which
time he was wholly incapacitated for work, or attending to
the duties of his profession; and that thereafter, as the result
of said illness, he was partially incapacitated for a period of
about six months, during which time he was intermittently
able to attend to his duties about one-third of the time. That
since the expiration of said six months plaintiff has at times
suffered from the effects of said illness, by reason of nervous-
ness and at times loss of memory. It is not alleged or shown
that plaintiff made his home at the restaurant, or that he was
aught but a casual customer for this one instance only. De-
fendant contends that section 1775 of the Civil Code does not
apply here; that his legal obligation to plaintiff and to the
public generally was fully observed by his use of ordinary
care in the business. In other words, he says that he was not
guilty of negligence.

So far as material here, it is alleged in the complaint, and
denied in the answer, that "said defendant did then and
there impliedly warrant that all the food, provisions, and
meals served at said restaurant and lunchroom were pure,
sound and wholesome." The record here consists only of the
transcript and appellant's opening brief. The court found,
among other things, as follows: "That the illness of said
plaintiff was caused by eating the said rice pudding, and be-
cause of some deleterious condition of said pudding, the
nature of which this court is unable to find, from the evidence
in this case." The court further found as follows: "That
the defendant did not, at said place, at said or any time, sell
provisions or food or meals except only in the regular course
of his restaurant business, and to the guests of the restaurant,
same being used as meals for the consumption of the guests
as such in said restaurant. That the defendant did not sell

provisions for human consumption except and only as above stated; that the defendant did not, then and there, or at any other time or place, impliedly, or otherwise, warrant that all or any of the food, provisions and meals served in said restaurant and lunchroom were pure, sound and wholesome. That said defendant exercised great care in the preparation of the meals to be served to his guests at said restaurant, and particularly . . . in the selection of the ingredients from which the food served to his guests at said restaurant, as aforesaid, was made up and compounded; . . . in the keeping of said restaurant clean, and in all respects fit and proper as a place for the preparation of, keeping and serving of meals to guests in a restaurant; . . . in the selection of ingredients from which the rice pudding referred to in plaintiff's complaint was made; that said rice pudding was made from rice, milk, eggs, and corn starch, all of which were of the best quality. That after the said ingredients were put together, the said pudding was boiled and cooked in a very hot oven, the heat being more than sufficient to destroy any and all germs or bacteria from which ptomaine poisoning could or might result; that immediately after being cooked the said rice pudding was taken and put in a closed, tight, clean refrigerating-box where the temperature of same was reduced to a very low degree, said pudding remaining in said box at all times up to and within not to exceed twenty minutes of the time when same was served to the guests of the restaurant, including plaintiff. That the room in which all meals were kept, served, and consumed was thoroughly ventilated, the air being withdrawn therefrom by powerful fans, and expelled outside the building; and that in so far as it was possible so to do, the said air was kept pure and wholesome, and that at no time was the temperature of said room allowed to become sufficiently high to permit of the propagation, breeding, or spreading of ptomaine bacteria or germs, or such as would produce ptomaine poisoning. That said defendant was not negligent in any respect in the conduct, management, or operation of his said restaurant, or in the selection of or the preparation of food to be served to his guests; and particularly in the selection of the ingredients from which said rice pudding was compounded; and was not negligent in the preparing, cooking, keeping, or serving of said rice pudding.''

The said findings are fully sustained by the evidence. It is apparent from the record that defendant's restaurant was clean and sanitary, and that defendant here was absolutely free from any negligence. There was no lack of ordinary care whatever in the handling or sale of the said meal so sold, or any portion thereof. We are, therefore, confronted with the question—and indeed, the appellant here so contends—as to whether the sale of the said meal by defendant to plaintiff, under these circumstances, would carry with it an implied warranty of fitness, under section 1775 of the Civil Code. If there is such an implied warranty, it is obvious that there is no legal requirement on the part of plaintiff either to allege or prove negligence; and, indeed, in this case there is no allegation or pretended proof of either an express warranty of quality or of knowledge on the part of defendant of the unwholesome or deleterious character of the said rice pudding so served, or of any of its ingredients, or, as has already been stated, of defendant's negligence in the premises.

It would seem, from an examination of the authorities in this state, that we are treading virgin soil, for, apparently, no case involving the issues here presented has ever reached an appellate tribunal in California. While quite a number of common-law cases will be found wherein it is held that a dealer in foods, selling directly to consumers for family use in their own homes, is liable on an implied warranty, as, for instance, butchers selling meat to customers for consumption at home—of which cases *Wideman* v. *Keller*, 171 Ill. 93, [49 N. E. 210] is an illustration—there is a surprising dearth of authorities respecting the liability of restaurant-keepers on an implied warranty of the fitness of the food furnished by them to their customers. No case, by a court of last resort, has been called to our attention in which it has been held that a restaurant-keeper is liable on an implied warranty. Of cases arising under the common law, wherein the liability of restaurant-keepers or caterers is involved, we find the following four: *Sheffer* v. *Willoughby*, 163 Ill. 518, [54 Am. St. Rep. 483, 34 L. R. A. 464, 45 N. E. 253] , *Crocker* v. *Baltimore Dairy Lunch Co.*, 214 Mass. 177, [Ann. Cas. 1914B, 884, 100 N. E. 1078] , *Pantaze* v. *West*, 7 Ala. App. 599, [61 South. 42] , and *Doyle* v. *Fuerst & Kraemer*, 129 La. 838, [Ann. Cas. 1913B, 1110, 40 L. R. A. (N. S.) 480, 56 South. 906]. In all of these cases the right of action was based on

negligence. Aside from *Merrill* v. *Hodson*, 88 Conn. 314, [Ann. Cas. 1916D, 917, L. R. A. 1915B, 481, 91 Atl. 533], we know of no case, in a court of last resort, in which an attempt was made to recover upon the strength of an implied warranty for harmful consequences resulting from unwholesome food or drink supplied by the keeper of a restaurant. In this Connecticut case, and likewise in *Valeri* v. *Pullman Co.*, 218 Fed. 519, it was held that there is no implied warranty of the quality of food furnished by a restaurant-keeper to a customer for immediate consumption on the restaurant premises. In this Connecticut case, and likewise the federal court case, the court held that the transaction between a restaurant-keeper and his customer is one for the rendition of service, and not a sale—the court in the Connecticut case saying that "the true essence of the transaction is service in the satisfaction of a human need or desire—ministry to a bodily want." The reasons given by these courts for holding that the transaction is not a sale, but the rendition of service, are summed up in the language of Professor Beal, as follows: "As an innkeeper does not lease his rooms, so he does not sell the food he supplies to his guest. It is his duty to supply such food as the guest needs, and the corresponding right of the guest is to consume the food he needs and to take no more. Having finished his meal, he has no right to take food from the table, even the uneaten portion of the food supplied to him; nor can he claim a certain portion of the food as his own, to be handed over to another in case he chooses not to consume it himself. The title to food never passes, as a result of an ordinary transaction of supplying food to a guest; or, as it was quaintly put in one old case: 'he does not sell but utters his provisions.' " (Beal on Innkeepers and Hotels, sec. 169.)

There are many cases, some of which are cited by appellant here, that have grown out of the sale of provisions by a dealer engaged in selling food for family use, such as butchers, pastry venders, and the like; but these cases are clearly not in point. Of the common-law cases, wherein it is held that, in the absence of negligence, a restaurant-keeper is not liable for ill health resulting from the unwholesomeness of food furnished by him, *Sheffer* v. *Willoughby, supra,* is perhaps the leading case. In discussing that case the court uses the following language: "In the first of the cited cases the obligations of a

restaurant-keeper are discussed, and a statement made of the
law which very plainly means, and has been generally under-
stood to mean, that the only remedy for the consequences of
eating unwholesome food, supplied by an innkeeper or
restaurant-keeper in the regular course of his business, is one
for lack of due care." Plaintiff here cites a well-considered
Massachusetts case, viz., *Farrell* v. *Manhattan Market Co.*,
198 Mass. 271, [126 Am. St. Rep. 436, 15 Ann. Cas. 1076, 15
L. R. A. (N. S.) 884, 84 N. E. 481], as supporting his con-
tention here. We have examined that case carefully, and
fail utterly to find any comfort therein for plaintiff. Just
one quotation from said case will probably suffice, in support
of the statement just made. It is as follows: "The decisions
on the question now before us in the United States, outside
of Massachusetts, are not many, and they do not deal with
the question at length. There is much in these opinions in
conflict with what is now the settled law in England. So far
as decisions go, however, there is but one in conflict with that
rule. That is the decision in *Hoover* v. *Peters*, 18 Mich. 51.
In that case it was held that in the sale of food for immediate
domestic consumption there is an implied warranty that it is
fit to be eaten, although the sale was made by one not
a dealer. *That is not the law in Massachusetts.* (*Howard* v.
*Emerson*, 110 Mass. 320, [14 Am. Rep. 608]; *Giroux* v. *Sted-
man*, 145 Mass. 439, [1 Am. St. Rep. 472, 14 N. E. 538].)
No cases are cited in the opinion, and there is a dissenting
opinion by Christiancy, J., on the ground that to make out a
liability in a sale of provisions, the vender must be a dealer,
or it must be proved that the defendant knew the provisions
to be unsound. . . . It is enough to dispose of this case to say
that the plaintiff did not sustain the burden of proof on that
issue. . . . Whatever may be the rule in respect to caterers in
serving meals, there is no case in which it has been held that in
the sale of provisions by a dealer the test of his liability is neg-
ligence. If the selection is left to the dealer, due care by him
is no defense. He is liable for latent unsoundness that could
not be discovered. (*Wallis* v. *Russell, supra* ([1902] 2 I. R.
585)—and see as to due care in the sale by a dealer of chattels
not articles of food, *Randall* v. *Newson*, L. R. 2 Q. B. Div. 102.)
If due care is no defense when the dealer makes the selection,
so there is no liability for negligence when a dealer offers sev-
eral articles of food for sale from which the buyer is to make

his own selection. In offering these several articles he impliedly represents that he believes all of them to be fit for food. That is the extent of his liability; no question of negligence is involved. The implied representation of soundness apart, there is no liability on a vender of food to be selected by the buyer because he did not procure and offer for sale better food than he procured and offered for sale.''

A restaurant has been defined as ''a public eating place.'' In the same case it was held that ''a restaurant-keeper is not, according to ordinary usage, either a merchant or a manufacturer. The fact is that both the sale and the manufacture of foods are minor incidents to the keeping of a restaurant. . . . It cannot be denied that the eating of food by a customer at a restaurant, in the regular course of business, involves a sale of the food eaten. The price of the food alone is usually not specified, but it is included in a lump sum with the charge for service and use of dishes, chair, and table. It is, nevertheless, a sale of the food consumed, within the technical definition of that term.'' (*San Francisco* v. *Larsen,* 165 Cal. 179, [131 Pac. 366].)

If, in the absence of any negligence whatever, a restaurant-keeper is liable on the ground of implied warranty of the fitness of food furnished by him, such liability can arise only by reason of said section 1775. Our attention has not been called to any other code section that gives the right of recovery in the absence of negligence. In some of the common-law cases it is said that where a ''manufacturer'' or *''dealer''* contracts to supply an article for a particular purpose, there is an implied warranty that the article is reasonably fit for that purpose. Under the principle as thus stated, it has been held by the English courts, and by courts of certain sister states, that a dealer engaged in the business of selling food for family consumption is liable if the food be not reasonably fit for that purpose. (In this connection see the English cases cited in *Farrell* v. *Manhattan Market Co.,* 198 Mass. 271, [126 Am. St. Rep. 436, 15 Ann. Cas. 1076, 15 L. R. A. (N. S.) 485, 84 N. E. 481].) In this state, however, the principle does not extend to ''dealers,'' but is restricted to ''manufacturers.'' It is provided in section 1769 of the Civil Code that ''one who sells or agrees to sell an article of his own *manufacture* thereby warrants it to be free from any latent defect, not disclosed to the buyer, arising from the pro-

cess of *manufacture*, and also that neither he nor his agent in such *manufacture* has knowingly used improper materials therein"; and in section 1770 that "one who *manufactures* an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." A restaurant-keeper, even though, by mixing ingredients and cooking them, he produces a different article, is not a "manufacturer" in any true sense of the word. (*New Orleans* v. *Mannessier,* 32 La. Ann. 1075; 26 Cyc. 521, 522; *Correio* v. *Lynch,* 65 Cal. 273, [3 Pac. 898].) Unless, therefore, an implied warranty in favor of appellant arises under said section 1775, there is no other code section that aids him, and the judgment and order must be affirmed.

This brings us to the real question in the case: What is the scope and meaning of section 1775? As we have shown, it was held in the Merrill and Valeri cases (88 Conn. 314, [Ann. Cas. 1916D, 917, L. R. A. 1915B, 481, 91 Atl. 533], and 218 Fed. 519) that where a customer is furnished food in a restaurant for immediate consumption, the transaction is not a sale but a rendition of service, and that, for this reason, there can be no implied warranty. Aside from this, there is, in our opinion, a stronger ground for holding that no implied warranty on the part of a restaurant-keeper arises under code section 1775. The implied warranty that arises under that section is confined to those who make a business of selling provisions "for *domestic* use." "*Domestic*" means "belonging to the house or household; concerning or relating to the home or family." (Standard Dictionary.) The word itself, in its derivation from "domus," a house, suggests its inherent purport. Thus it has been held that servants employed in a hotel are not "domestic" servants. (*Cook* v. *Dodge,* 6 La. Ann. 275.) The "domestic" use of water means the use to which water is applied by the family, or for family use, and includes all use to which water is applied around the home, including the watering of animals there; but it does not include the temporary quenching of the thirst of men or animals at drinking places maintained by the city in public places. (*Water Supply Co.* v. *Albuquerque,* 17 N. M. 326, [43 L. R. A. (N. S.), 439, 128 Pac. 77].) It is the place where the food is eaten or drunk, rather than the fact that it is food or drink, that determines whether its use is a "domestic" use or not. For these reasons we are of the

opinion that defendant was not "one who makes a business of selling provisions for domestic use," and that, therefore, section 1775 of the Civil Code is not applicable.

Appellant has cited certain decisions of the New York supreme court, criticised by Judge Hand in *Valeri* v. *Pullman Co., supra*. These are not decisions by a court of last resort, and we agree with all that Judge Hand says of them. Of the decisions of courts of last resort, cited by appellant, some will be found to be cases where the plaintiff relied upon and alleged negligence, as, for instance, *Doyle* v. *Fuerst & Kraemer, supra,* where the court said of defendants' evidence that it "falls short of showing even ordinary care"; others are cases where the defendant sold food to the plaintiff for family or domestic use, as *Parks* v. *Yost Pie Co.,* 93 Kan. 334, [L. R. A. 1915C, 179, 144 Pac. 202], where the defendant was a wholesale maker of pies, who had sold some of its products to a retail concern, which, in turn, sold the pie to Parks as suitable food for himself and family, to be consumed at home. We are satisfied, therefore, that the overwhelming weight of authority, both in England and America, supports our present conclusion, viz., that in such cases as are supported by the facts under consideration here, that "there is no implied warranty of the quality of food furnished by a restaurant-keeper to a customer for immediate consumption, since the transaction does not constitute a sale but a rendition of service."

There is, however, another aspect to this case which has not been touched, so far as the record in this case discloses, but which, in view of what we believe to be the importance of this decision, we feel should be touched upon, and that is, that the plaintiff here having elected to rely upon an alleged implied warranty under section 1775 of the Civil Code, that we are confronted, therefore, with the question: "What is the measure of damages in such case?" This question is answered by section 3313 of the Civil Code. The court found "that prior to the time of being taken ill, as aforesaid, plaintiff's average gross income from his profession as an attorney at law was four hundred ($400) dollars per month; that no evidence whatsoever was introduced or offered as to what his average, or any, income was after the fourteenth day of August, 1911; and this court is not able to find what amount, if anything, plaintiff was able to and did earn in his profes-

sion subsequent to the fourteenth day of August, 1914.''
The court further found that, ''no evidence whatsoever was
offered or introduced of the value of said rice pudding at
the time at which plaintiff bought his said meal, or of its
actual value at said time, or at any time; and no evidence
whatsoever was introduced showing, or tending to show, the
difference or excess, if any, of the value of said rice pudding
over what it would have been at said time had the same been
absolutely pure, wholesome, and not deleterious; and no evi-
dence whatsoever was introduced of any loss or damage in-
curred in any effort, in good faith, to use said pudding for
the purposes for which it was purchased; and no evidence
whatsoever was introduced of what would or might be a fair
or any compensation for any loss incurred by the plaintiff in
any effort whatsoever to use said pudding for the purposes
for which the same was sold to him.'' The court further
found as a fact ''that plaintiff was not damaged by defend-
ant in any sum whatsoever.''

Assuming—although in this case we hold to the contrary—
that there is an implied warranty on the part of a restaurant-
keeper, under the exact state of facts presented here, still,
in the absence of evidence, as disclosed by the findings just
quoted, from which the trial court could arrive at any con-
clusion as to the measure of damages, we are of the opinion
that the trial court was helpless to do anything other than to
enter judgment in favor of defendant, as was done in this
case.

Judgment and order affirmed.

FINLAYSON, P. J., and SLOANE, J., Concurring.—We
concur in the judgment for the reason that, in the absence of
any showing of negligence, the only ground upon which de-
fendant can possibly be held liable is that of an implied war-
ranty of the purity and quality of the food dispensed by it.
The only implied warranty that might be invoked as appli-
cable to the transaction, under the law of California, is that
declared in section 1775 of the Civil Code, which applies alone
to ''one who makes a business of selling provisions for domes-
tic use.'' The complaint does not allege, and the facts do
not show, that the defendant was engaged in the business of
selling provisions for ''domestic use,'' or that the transaction
in question was a sale for ''domestic use.'' The defendant

is a restaurant-keeper, who dispenses food to be consumed by customers in his place of business, and such was the transaction here complained of. Under a strict and accurate definition, the term "domestic use" does not apply to such sales.

The statute in question, as well as the common-law doctrine on which it is based, lays down a severe rule, which makes the dealer responsible for the consequence of any deleterious quality in his wares, no matter how free from negligence or fault he may be. It ought not to be extended, by judicial implication or construction, beyond its strict legal meaning. If it be said that it is unreasonable to distinguish between a sale of food by a restaurant-keeper to be consumed on his own premises and the sale of food by a dealer to be taken home and eaten in the domestic environment of the purchaser, the answer must be found in the maxim *ita lex scripta est;* and one shown to be free from negligence, as was the case here, ought not to be held liable on an implied warranty, unless he is clearly within the letter and meaning of the law as written.