13361.  ROWE v. LOUISVILLE & NASHVILLE RAILROAD
CO.

A railroad company which runs dining-cars attached to its passenger-trains is not an insurer of the wholesomeness of the food served therein, and in case of injury to a patron from the consumption of deleterious food so furnished is liable only where there was a failure to exercise reasonable care in respect to its quality and preparation.

DECIDED OCTOBER 5, 1922.

Action for damages; from Fulton superior court — Judge Ellis. February 10, 1922.

*Thomas J. Lewis, John T. Dennis,* for plaintiff.

*Tye, Peeples & Tye,* for defendant.

BLOODWORTH, J.  Mrs. W. T. Rowe brought suit against the Louisville & Nashville Railroad Company, alleging that while traveling on said road she went for her evening meal into a dining-car attached to the train and which was operated by the defendant; that she was served with food which was " spoiled and contaminated to such an extent as to render it unfit for food; " that " defendant was negligent in selling to petitioners an impure, contaminated, and spoiled article of food, without giving her any warning of its condition," and that by eating said food she was " rendered sick and ill with a sickness or disease known as ptomaine poisoning."  The trial of the case resulted in a verdict for the defendant, and the plaintiff excepted.  In the brief of counsel for the plaintiff special grounds 1 and 4 of the motion for a new trial are expressly abandoned, leaving for consideration the general grounds and special grounds 2 and 3.  These special grounds alleged that the court erred in instructing the jury as follows:  (2)  " The burden of proof is on the plaintiff to show that she was injured by unwholesome food served to her in the dining-car of the defendant as alleged by her, and also that the defendant was lacking in ordinary care in respect to the quality and preparation of the food furnished her; and that in the exercise of ordinary care the defendant should have known that such food was of a character, or so prepared, as that its service to plaintiff would be likely to cause her injury."  (3)  " It was the duty of the defendant company in furnishing meals to passengers and to this plaintiff, to furnish a meal on the train at that time and to furnish her wholesome food, and it must exercise ordinary care to do that, and ordinary care means that care that every

prudent person would exercise under the same or similar circumstances. You perceive that the defendant would not be liable from the fact that the food was impure; that is, it would not be necessarily liable because the food was impure; but it was bound to exercise ordinary care to furnish good food, wholesome food, and if it did, it would not be liable on that ground. The defendant, under the law, is not an insurer of the wholesomeness of food served in its dining-car, and can only be held liable for injury to a patron of said car from the service of deleterious food so furnished through failure on its part to exercise ordinary care in respect to the quality and preparation of such food. And, as I stated before, if the defendant did furnish her unwholesome food, and if you believed it exercised ordinary care in preparation and presentation to her of this food, it would not be liable."

This case is very much like that of Valeri *v.* Pullman Co., 218 Fed. 519, which " was an action to recover damages for personal injuries sustained by plaintiff through eating food served to her by defendant upon its buffet car." In this case, as in the Valeri case, " the question, squarely raised, therefore, is whether the liability of the defendant, who apparently differs in no wise from any other person keeping a restaurant, is that of an insurer of its food, or whether it is only liable to exercise reasonable care in providing and serving such food as it offers for consumption." In the brief of counsel for the plaintiff it is insisted that the court should have given section 4135 of the Civil Code of 1910 in charge to the jury, on the law of implied warranty, and should have charged the jury as follows: " In the transaction that took place between Mrs. Rowe and the Louisville & Nashville Railroad Company at the time she was served a meal on its train between Montgomery and Birmingham the railroad impliedly contracted with her to sell the articles of food which they warranted to be merchantable and reasonably suited for the use intended." In this contention we cannot agree with counsel. The section of the code referred to relates to private sales, and does not apply where meals are served in a dining-car, as in this case. Prof. Beale in his book on Innkeepers (§ 69) says: " The innkeeper is not an insurer of the quality of his food, but he would be liable for knowingly or negligently furnishing bad or deleterious food." In Loucks *v.* Morley, 39 Cal. App. 578 (179 Pac. 532), Mr.

Justice Thomas said: "We are satisfied, therefore, that the overwhelming weight of authority, both in England and America, supports our present conclusion, viz., that in such cases as are supported by the facts under consideration here 'there is no implied warranty of the quality of food furnished by a restaurant keeper to a customer for immediate consumption, since the transaction does not constitute a sale but a rendition of service." In Merrill v. Hodson, 88 Conn. 317, 318 (91 Atl. 534, L. R. A. 1915 B, 481; Ann. Cas. 1916D, 917), a case in which food was furnished by a restaurant keeper to a customer, Chief Justice Prentice said: "A restaurant keeper differs from an innkeeper in that he furnishes only food, or food and drink, and not lodging or shelter. Beale on Innkeepers, §§ 35, 301. In so far as the character of the service performed by a restaurant keeper and innkeeper to their respective patrons is concerned, it is the same. In Saunderson v. Rowles, 4 Burrows, 2064, 2068, Lord Mansfield, commenting upon this fact, observed that 'the analogy between the two cases of an innkeeper and a victualler is so strong that it cannot be got over.' In neither case does the transaction, in so far as it involves the supply of food or drink to customers, partake of the character of the sale of goods. The essence of it is not an agreement for the transfer of the general property of the food or drink placed at the command of the customer for the satisfaction of his desires, or actually appropriated by him in the process of appeasing his appetite or thirst. The customer does not become the owner of the food set before him, or of that portion which is carved for his use, or of that which finds a place upon his plate or in side dishes set about it. No designated portion becomes his. He is privileged to eat and that is all. The uneaten food is not his. He cannot do what he pleases with it. That which is set before him or placed at his command is provided to enable him to satisfy his immediate wants, and for no other purpose. He may satify those wants; but there he must stop. He may not turn over unconsumed portions to others at his pleasure, or carry away such portions. The true essence of the transaction is service in the satisfaction of a human need or desire — ministry to a bodily want. A necessary incident of this service or ministry is the consumption of the food required. This consumption involves destruction, and nothing remains of what

is consumed to which the right of property can be said to attach. Before consumption title does not pass; after consumption there remains nothing to become the subject of title. What the customer pays for is a right to satisfy his appetite by the process of destruction. What he thus pays for includes more than the price of the food as such. It includes all that enters into the conception of service, and with it no small factor of direct personal service. It does not contemplate the transfer of the general property in the food supplied as a factor in the service rendered.' . . We know of no case, aside from the present, in which an attempt has ever been made, in cases brought to recover for the harmful consequences resulting from unwholesome food or drink supplied by the keeper of an inn, restaurant or boarding house, in the line of his business, to recover upon the strength of an implied condition or warranty of quality. Those which have grown out of a sale of provisions by a dealer are, of course, not in point. In the first of the cited cases the obligations of a restaurant keeper are discussed, and a statement of the law made which very plainly means, and has been generally understood to mean, that the only remedy for the consequences of eating unwholesome food supplied by an innkeeper or restaurant keeper in the regular course of his business is one for lack of due care. Beale on Innkeepers, §§ 169, 302, so states the law. See, to the same effect, 22 Cyc. 1081; 16 Amer. & Eng. Ency. of Law (2d ed. 547)."

In Greenwood Cafe *v.* Lovinggood, 197 Ala. 34 (2) (72 So. 354 (2) ), it was held: " The keeper of a hotel, dining car, café, or other public eating place, engaged in the business of serving food to customers, is bound to use due care to see that the food so served is fit for human consumption and may be eaten without causing sickness or endangering life by reason of its condition, so that, for his negligence in failing to observe such duty to his patrons, such keeper is liable." A number of decisions were there cited to support this view. In Sheffer *v.* Willoughby, 163 Ill. 522, Mr. Justice Craig said: " As respects the goods of a guest which he takes with him when he stops at an inn, the innkeeper is practically an insurer, and where an action is brought to recover for goods lost, the guest is only required to show the existence of the relation of inkeeper and guest, and the loss, to au-

thorize a recovery. But as to food served at a restaurant, such as oysters, ice cream and the like, we are not aware that a similar rule establishing liability ever existed. There is no similarity between the two cases, and the principle that governs one does not apply to the other. If a person keeping a public restaurant fails to exercise ordinary care in furnishing food to his patrons and damage results, he will be liable if his business be conducted in a careless or negligent manner and through such negligence a patron is injured. But where an action is brought to recover damages the burden is upon the person bringing the action to establish carelessness or negligence." See Travis v. L. & N. R. Co., 183 Ala. 415 (62 So. 851). Judge Hand in the Valeri case, supra, concludes his opinion as follows: "In my opinion there is no well-considered authority and no public policy which afford any justification for imposing upon the defendant the absolute liability of an insurer of its food, and I deem that the only obligation of the defendant, or any keeper of a restaurant or inn, is to exercise the reasonable care of a prudent man in furnishing and serving food." Speaking generally on the law governing the liability of innkeepers, Circuit Judge Sanborn, in Clancy v. Barker, 131 Fed. 163 (66 C. C. A. 471), said: "The general rule of law governing the liability of innkeepers when these defendants made their agreement with the plaintiff, the rule which had received the approval of every court which had ever decided the question, so far as we have been able to discover, was that an innkeeper was not an insurer of the safety of the person of his guest against injury, but that his obligation was limited to the exercise of reasonable care for the safety, comfort, and entertainment of his visitor."

Furthermore, even conceding that under the changed conditions of the present day the owner of a restaurant or dining car does *sell* the food which his customer orders and eats, and that the customer becomes the owner of the food and can do as he pleases with it, section 4460 of the Civil Code (1910) excludes the idea of an implied warranty in such a case, and makes the liability of the owner depend upon negligence, the language of the section being as follows: "A person who *knowingly* or *carelessly* sells to another unwholesome provisions of any kind, the defect being unknown to the purchaser, and damage resulting to the

purchaser, or his family, or his property, shall be liable in damages for such injury." (Italics ours.)

Under the rulings in the foregoing cases the excerpts from the charge of which complaint is made are not erroneous, and, there being evidence to support the finding of the jury, the judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*