Joseph Kessler
vs.                    } No. 91344.
Waldorf System, Inc.

DECISION.

May 7, 1934.

CAPOTOSTO, J. Action in assumpsit for damages claimed to have been caused by unwholesome food. Heard without a jury.

The plaintiff. a live poultry dealer of Millville, Massachusetts, is a robust man about thirty-five years old. The defendant has a place of business in the center of Providence. The plaintiff claims that on the morning of April 22, 1933, he was served with a muffin which "didn't taste good * * * tasted musty"; that by looking "sharply" at what was left he noticed spots of blue mold; that he felt bad, called the attention of the counterman to the condition that he had discovered, retired to the lavatory in an attempt to clear his stomach by artificial means, paid his check and went out. He further stated that he soon became sick to his stomach, was obliged to go to his mother's house on Orms Street, and immediately called a physician who lived close by. The next day his wife drove him back to Millville where he was attended by the Providence physician some six times during the next two weeks. After that, he was treated a few times at the doctor's office in this city. From all that appears of record, the main object of these professional visits in two states was to regulate the plaintiff's diet.

The damages which the plaintiff claims as a result of eating a small portion of a moldy muffin are: $45 for medical expenses; absolute incapacity for two weeks and partial disability for some time thereafter at a loss of between 50 and 75 dollars a week; loss of weight and physical suffering of an annoying character for an indeterminate period.

The plaintiff seeks to establish liability through his statements that before he ate any of the muffin he "felt great" and that he had eaten nothing else that morning. He makes no reference to what other food he may have had immediately before that morning and is absolutely silent as far as any liquids are concerned.

His condition was diagnosed as acute gastritis or irritation of the stomach. This condition, according to the medical testimony, is caused by the ingestion of some irritant in either solid or liquid from. The plaintiff's own doctor frankly testified that he knew of no other case nor of any medical authority which supported the conclusion that mold in bread would produce the symptoms complained of. This testimony was corroborated by a physician called by the defendant, who further said that in a case of poisoning by food or drink, there is a period of bacterial incubation, varying from at least two to seventy-two hours, before physical symptoms become apparent. The present case is so unique in its transition from cause to effect that the potential harmful quality, if any at all, of moldy bread opens a new road to fame for some research institute. In view of the medical testimony, the weakness in the plaintiff's case is the absence of any evidence as to what he may have taken, in the way of other food or drink, within the period of incubation. Some things may speak for themselves, but this principle is extremely restricted in establishing the legal connection between cause and effect.

The Court has given this case more than the usual attention because, irrespective of its merits, it seeks to establish a departure from the established practice in this state with reference to the liability of a public dispenser of food or drink. Since the case of *Minutilla* vs. *Providence Ice Cream Co.*, 50 R. I. 43, all actions for consequential damages due to foreign or harmful substances in food or drink have been in trespass on the case for negligence. Under this practice, restaurant and inn keepers have received reasonable protection against the possibility, if not probability, of vexatious and unjust claims. In this particular case, the plaintiff saw fit to bring his action in assumpsit on the theory of

implied warranty. In so far as this Court is informed, both through counsel and by personal investigation, the highest Court of this state has not passed its judgment on this proposition which vitally affects business as well as the individual. Shall a person, who claims to have been injured by eating unwholesome food in a restaurant or other public eating place, have the option to sue either in assumpsit on the theory of an implied warranty or in trespass on the case for negligence and in both instances recover the same measure of damages? If this right is finally conceded, then, for obvious reasons, the Minutilla case may just as well be relegated to the archives of legal history so far as active practice is concerned. The issue simmers down to a question of sound public policy rather than fine legal distinctions.

Actions in assumpsit in cases of this kind have appeared sporadically in different parts of the country within the last twenty years. Those courts which have been confronted with this proposition have taken opposite views. Connecticut, New Jersey, Pennsylvania and California deny the right to sue in assumpsit. Massachusetts, with a divided opinion, Ohio, Indiana and Illinois permit recovery under such a form of action. It is quite unnecessary here to resort to extensive citations, other than to say that the two leading cases on this point are *Merrill* vs. *Hodson*, 88 Conn. 314, and *Friend* vs. *Childs Dining Hall Co.*, 231 Mass. 65. The majority and minority opinions in the Massachusetts case clearly and forcibly present both sides of the question. Rugg, J., says that the transfer of food by a restaurant keeper to a customer constitutes a sale and a warranty of fitness is implied both at common law and under the Sales Act. "The opportunity for an innkeeper or restaurant keeper, who prepares and serves food to his guest, to discover and provide against deleterious food is at least as ample as is that of the retail dealer in foodstuffs." Crosby, J., dissenting, maintains that the transaction is not a sale nor an agreement for the transfer of the property in the food but the rendition of service; that the obligation on the restaurant keeper is limited to the exercise of reasonable care and that the rule making him in effect an insurer "is not for the protection of the public, and is apt to result in the prosecution of groundless claims which it will be difficult, if not impossible, to meet."

This vexatious question, especially with reference to the measure of damages that may be recovered if suit is brought in assumpsit and which other Courts have passed over lightly, awaits determination by ultimate authority in this state. For the purpose of the case at bar, and for this purpose alone, the Court will assume that the plaintiff has the right to sue in assumpsit on the theory of an implied warranty. The facts, however, are not sufficient to support a decision for the plaintiff even under that view. The relation between cause and effect is so conjectural, so opposed to medical knowledge, and so contrary to ordinary human experience as to border upon pure speculation.

Decision for the defendant.

For plaintiffs: Voigt, Wright & Munroe, Goldberg & Goldberg.

For defendants: Henshaw, Lindemuth & Baker.